**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**RAND & REED POWERS PARTNERSHIP, Defendant.**

**No. C 94–4058–MWB.**

United States District Court, N.D. Iowa, Western Division.

Aug. 7, 1997.

Kimberly J. Walker of Faegre and Benson, Des Moines, IA, for Plaintiff.

Michael R. Bovee of Montgomery, Barry & Bovee, Spencer, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION ...............................................1198
 A. The Stay of the Proceedings ...........................1198
 B. The Cross–Motions For Summary Judgment ................1199
 C. Questions Of State Law ................................1199

II. STANDARDS FOR SUMMARY JUDGMENT ............................1201
 A. Fed.R.Civ.P. 56 .......................................1201
 B. Primarily Legal Questions .............................1202

III. FACTUAL BACKGROUND .......................................1203
 A. The Contract ..........................................1203
 1. Iowa rules of contract construction and interpretation ...1203
 2. Construction and interpretation of the contract ..........1204

 B. The Common–Law Rule On Prepayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1206
 C. The Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1206
 1. Iowa rules of statutory interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1207
 2. Interpretation of the statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1210
 a. Plain meaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1210
 b. Ambiguity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1211
 c. Consequences of interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1212
 D. Declaration Of The Rights Of The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1215

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1215

Does an Iowa statute, Iowa Code § 535.9, which prohibits prepayment penalties and charges on a loan used in part for the purchase of agricultural land, also prohibit contractual language that forbids the prepayment of the loan? That is the principal question before the court in this declaratory judgment action between a lender asserting a contractual and common-law right to refuse to accept prepayment of a loan and a borrower asserting a statutory right to prepay the loan without penalty. Because the question presented involves issues of first impression under state law, and the parties have eschewed certification of questions to the state supreme court, this court must "predict, as best [it] can, how that [state high] court would decide the issue[s]." *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir.1994). Little versed in the art of divination, finding no mystical symbols on its robe, and lacking any experience with examination of the entrails of birds or other omens,[1] this court turns from the tools of prognosticators and soothsayers of more superstitious ages to an examination of the insides of law books—a method the court believes will be both more reliable and less messy—to predict whether a contractual prohibition on prepayment of a loan is enforceable under Iowa statutory and common law.

## I. INTRODUCTION

Plaintiff Prudential Insurance Company of America, a New Jersey corporation, filed this declaratory judgment action on July 22, 1994, against the Rand & Reed Powers Partnership (Powers Partnership), an Iowa partnership. Prudential seeks a declaration of the rights of the parties under a Note and Mortgage executed by the Powers Partnership on August 17, 1992, with regard to prepayment of the Note. The Powers Partnership answered the declaratory judgment complaint on September 9, 1994, also asserting a counterclaim that Prudential has violated Iowa Code § 535.9, and hence breached the terms of the loan agreement as modified by Iowa Code § 535.9, by refusing to accept prepayment of the loan agreement.

### A. The Stay Of The Proceedings

This litigation was stayed approximately thirteen months after it was filed, because the central question presented here was before the Eighth Circuit Court of Appeals on appeal of another matter, *Bank of Am. Nat'l Trust & Sav. Assoc. v. Shirley*, No. 1–93–CV–10033 (S.D.Iowa May 19, 1994). However, in the decision on appeal of that case, handed down on September 25, 1996, the Eighth Circuit Court of Appeals did not in fact reach the question of whether Iowa Code § 535.9 bars enforcement of a "no prepayment" clause in a loan contract. *See Bank of Am. Nat'l Trust & Sav. Assoc. v. Shirley*, 96 F.3d 1108 (8th Cir.1996) (holding that Iowa Code § 535.9 is preempted by the Farm Credit Act, and thus, whether or not Iowa Code § 535.9 barred a "no prepayment" clause was "irrelevant"). Although the anticipated guidance of the Eighth Circuit Court of Appeals on the pertinent questions is lacking, the parties have submitted those questions to this court on cross-motions for sum-

---

1. "Divination," the "act or art of knowing or foretelling the unknown," is "a practice of the greatest antiquity, performed everywhere in the world, by peoples in every cultural status, and utilizing almost every conceivable instrument or phenomenon as an indicator," including interpretation of dreams, reading the augury of the flight of birds or the configuration of the stars and planets, or messier methods, such as "explain[ing] the markings of the shoulderbone or the liver of [a] sacrifice." Funk & Wagnalls Standard Dictionary of Folklore, Mythology, and Legend 316 (Maria Leach, ed., 1972); *see generally id.* at 316–17.

mary judgment. Consequently, the stay on these proceedings is now lifted.

### B. The Cross–Motions For Summary Judgment

■■■ On February 21, 1997, following a status conference during the stay of these proceedings, the court set oral arguments for July 18, 1997, on anticipated cross-motions for summary judgment. On March 26, 1997, the parties submitted a joint revised scheduling report setting deadlines and a briefing schedule for those dispositive motions. Pursuant to the scheduling order, on June 18, 1997, Prudential moved for summary judgment and the Powers Partnership filed its

cross-motion for partial summary judgment on Prudential's declaratory judgment claim.[2] Prudential resisted the Powers Partnership's motion for partial summary judgment on July 2, 1997, and the Powers Partnership resisted Prudential's motion for summary judgment the following day, on July 3, 1997. Prudential filed a reply brief in support of its motion for summary judgment on July 11, 1997. Oral arguments on the motions took place as scheduled on July 18, 1997.[3]

### C. Questions Of State Law

There is no dispute that state law governs the question of the effect of Iowa Code

2. The Powers Partnership does not challenge the propriety of Prudential's assertion of the present questions in a declaratory judgment action, but the Declaratory Judgment Act confers " 'unique and substantial discretion' " upon federal courts to decide whether or not to entertain, stay, or dismiss the action. *Budget Rent–A–Car v. DeCoite*, 113 F.3d 1132, 1134 (9th Cir.1997) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 277 & 280, 115 S.Ct. 2137, 2139 & 2144, 132 L.Ed.2d 214 (1995)); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir.1997) (recognizing that the Declaratory Judgment Act " 'created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants,' " quoting *Wilton*, 515 U.S. at 287–89, 115 S.Ct. at 2143). In this case, the court finds that it should exercise its discretion to hear the controversy between the parties in this declaratory judgment action.

Congress has provided for declaratory judgments by the federal courts through two provisions of the Declaratory Judgment Act: section 2201 of Title 28, which creates the remedy for the court to "declare the rights and other legal relations of any interested party seeking such declaration," and section 2202, which provides for "[f]urther necessary or proper relief based on a declaratory judgment or decree." " 'The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action.' " *Horne v. Firemen's Retirement Sys. of St. Louis*, 69 F.3d 233, 236 (8th Cir.1995) (quoting *United States v. Fisher–Otis Co.*, 496 F.2d 1146, 1151 (10th Cir.1974)). However, the Declaratory Judgment Act, 28 U.S.C. § 2201, itself does not provide an independent basis for federal jurisdiction. *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 594 (2d Cir.1996) ("[I]t is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts"). In this case, an independent basis for jurisdiction, diversity jurisdiction pursuant to 28 U.S.C. § 1332, is present, because the

plaintiff is a New Jersey corporation and the defendant is an Iowa partnership.

There are, however, a number of factors, besides subject matter jurisdiction, that the court must consider in deciding whether to exercise jurisdiction over a declaratory judgment action. *See Olympus Aluminum Prods., Inc. v. Kehm Enters., Ltd.*, 930 F.Supp. 1295, 1304–08 (N.D.Iowa 1996) (articulating the requirements for a court to entertain a declaratory judgment action). A brief examination of these factors indicates the propriety of entertaining the present declaratory judgment claim. The controversy between the parties is "live" and therefore "substantial," because the issue of the Powers Partnership's ability to prepay the Note remains "live" until the Note matures. *Id.* at 1305. Also, Prudential has standing to pursue the declaratory claim, since the injuries of which it complains are " 'imminent and direct, not hypothetical or fantastic,' " *id.* at 1306 (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir.1996)), because the Powers Partnership has asserted a right to prepayment at some loss to Prudential. The court also believes that the exercise of its discretion to hear the declaratory claim is warranted, because the declaratory claim is not being used simply for tactical advantage, nor has the court allowed the claim to provide a new portal for entry into federal court, and there is no pending state action that would provide an appropriate forum for adjudication of the enforceability of the "no prepayment" clause of the Note. *Id.* at 1306–07. Instead, the court finds that the declaratory claim here is asserted for the legitimate purpose of declaring the rights and other legal relations of the interested parties. *Id.* at 1307. The court will therefore exercise its discretion to hear the declaratory judgment claim.

3. At oral arguments, plaintiff Prudential Insurance Company was represented by counsel Kimberly J. Walker of Faegre and Benson in Des Moines, Iowa. Defendant Rand & Reed Powers Partnership was represented by counsel Michael R. Bovee of Montgomery, Barry & Bovee in Spencer, Iowa.

§ 535.9 on the Powers Partnership's ability to prepay its Note in light of contractual language prohibiting prepayment, as well as every other issue, pertaining to the enforceability of the Note's ban on prepayment. Furthermore, the briefs of the parties and the court's own preliminary research indicated that there are no decisions of Iowa appellate courts at all construing Iowa Code § 535.9, upon which the Powers Partnership principally relies for a right to prepay the Note. Consequently, the court suggested that the parties consider the possibility of certifying questions raised in this litigation to the Iowa Supreme Court. *See* N.D. Ia. L.R. 83.10 (authorizing certification of questions "as to which it appears there is no controlling precedent in the decisions of the appellate courts of the state"); Iowa Code § 684A.1 (authorizing the Iowa Supreme Court to answer certified questions "as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state"); *see also Employers Ass'n, Inc. v. United Steelworkers of Am., AFL–CIO–CLC,* 19 F.3d 405, 408 (8th Cir.1994) (observing that, in the absence of an interpretation of state law by the state's high court, "the most prudent course is to await a definitive interpretation by [the state's] highest court," at least when the question is actually pending before the state court), *opinion vacated,* 23 F.3d 214 (8th Cir.1994) (vacating the prior opinion was vacated upon the discovery by the court of appeals that the Minnesota Supreme Court had in fact ruled upon the question thought to be one of first impression just prior to the handing down of the federal appellate court's decision).[4]

Although the parties had no objection to the court certifying questions to the Iowa Supreme Court *sua sponte,* both expressed a preference that this court decide the questions presented. The parties were concerned that this litigation had already been stayed for some time while the principal question here was pending before the Eighth Circuit Court of Appeals in another case, and that further delays were likely to arise from certi-

fication of questions to the Iowa Supreme Court. Therefore, they indicated a preference that this court proceed to the merits of the cross-motions for summary judgment instead of certifying questions to the Iowa Supreme Court.

■ Federal courts must often interpret state law in diversity actions, and sometimes, as here, those determinations are on questions of first impression. A federal court is bound by the interpretation of a state's statutes by the state's highest court. *Missouri v. Hunter,* 459 U.S. 359, 366–68, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983); *Rhode v. Olk–Long,* 84 F.3d 284, 290 (8th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 232, 136 L.Ed.2d 163 (1996); *Employers Ass'n, Inc.,* 19 F.3d at 408 (" '[W]e are of course bound by a State's interpretation of its own statute ...' " quoting *Garner v. Louisiana,* 368 U.S. 157, 166, 82·S.Ct. 248, 253, 7 L.Ed.2d 207 (1961)); *Becker v. Lockhart,* 971 F.2d 172, 174 (8th Cir.1992) (noting that state courts may give the terms of a state statute "whatever meaning they wish," and " '[the federal courts] are obliged to accept their interpretation, just as though it were written into the statute in so many words,' " unless that interpretation is " 'so unexpected, so outlandish, that no reasonable person could have expected it.' " quoting *Welton v. Nix,* 719 F.2d 969, 970 (8th Cir.1983)), *cert. denied,* 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993); *Edens v. Shelter Mut. Ins. Co.,* 923 F.2d 79, 81 (8th Cir.1991) ("As a federal court interpreting a state statute, we are bound by the construction given the statute by the highest court within the state that has addressed the matter," citing *Chandler v. Presiding Judge, Callaway County,* 838 F.2d 977, 979 (8th Cir.1988)); *Medical Protective Co. v. Bell,* 912 F.2d 244, 245 (8th Cir.1990) (also citing *Chandler* ), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991).

■ In the absence of such interpretation by the state court, however, a federal court, confronted with an issue of first impression under state law, has the "responsi-

---

4. The court raised the issue of certification of questions to the Iowa Supreme Court in a letter to counsel a few days before the scheduled oral arguments on the cross-motions for summary judgment. Certification of questions was therefore the primary subject of the telephonic oral arguments held on July 18, 1997.

bility to predict, as best [it] can, how that [state high] court would decide the issue." *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir.1994). Yet, that prediction is not made in a vacuum: When such authorities are helpful, the federal court may turn to the decisions of other jurisdictions for guidance on questions of first impression under the law of a particular state, *Gilliam v. Roche Biomedical Labs., Inc.*, 989 F.2d 278, 280 n. 3 (8th Cir.1993), and may also look at the manner in which the state court has construed similar statutory provisions under similar fact situations. *Becker*, 971 F.2d at 175 (looking at how the Arkansas courts had interpreted "immediately" in various *criminal* statutes in similar fact situations); *Edens*, 923 F.2d at 81 (considering a case in which no reported decision of the state court interpreted the statute in question, thus presenting an issue of first impression, and stating, "Without any direct guidance from the [state] courts, the court must look to other expressions of the [state] legislature on similar subjects as well as judicial interpretations from other jurisdictions that have enacted similar legislation.").

Thus, although the present litigation involves questions of first impression under state law, this court, now cast in the role of oracle, but armed with the tools of reason, will attempt to predict how the Iowa Supreme Court would resolve the questions raised by the parties' cross-motions for summary judgment, rather than certifying those questions to the Iowa Supreme Court. *Compare Hegg v. United States*, 817 F.2d 1328, 1330 (8th Cir.1987) (both parties urged the court to decide a question of first impression under state law without certification to the Iowa Supreme Court, and the district court properly did so).[5]

Although the oral arguments were principally concerned with whether or not this court should certify pertinent questions to the Iowa Supreme Court, the parties indicat-ed at the close of oral arguments that they were content to have this court decide the merits of the questions presented on the basis of their written briefs and other submissions in support of their cross-motions for summary judgment. Therefore, this matter is now fully submitted.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly sixty years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

### A. Fed.R.Civ.P. 56

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

**Rule 56. Summary Judgment**

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the

---

**5.** The Eighth Circuit Court of Appeals formerly held that, when the district court's interpretation of state law is on a matter of first impression, the appellate court would give "substantial weight and deference to the district court's ruling unless it is '"fundamentally deficient in analysis or otherwise lacking in reasoned authority."'" *Hegg*, 817 F.2d at 1330 (quoting *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1330 (8th Cir.1985), in turn quoting *Ancom, Inc. v. E.R. Squibb & Sons*, 658 F.2d 650, 654 (8th Cir.1981)). However, the Supreme Court has since made clear that a federal court of appeals must review *de novo* a. federal district court's determination of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991); *Brandenburg*, 23 F.3d at 1440 (adding that the *de novo* review is "without deference").

action or after service of a motion for summary judgment by the adverse party, move with or ·without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added). This court has considered in some detail the standards applicable to motions for summary judgment in a number of recent decisions. *See, e.g., Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–41 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 816–19 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). However, the present motions for summary judgment require a somewhat narrower analysis than is the norm.

### B. Primarily Legal Questions

■ Ordinarily, analysis of a motion for summary judgment focuses on whether there are genuine issues of material fact that preclude summary judgment in the movant's favor,[6] because they require submission of the case to a trier of fact. *See Coonley v. Fortis Benefit Ins. Co.,* 956 F.Supp. 841, 844 (N.D.Iowa 1997). *See generally, Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53 (if the nonmoving party fails to make a sufficient

showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law."); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (1990) (same). However, in the present case, both parties have moved for summary judgment on the ground that there are no genuine issues of material fact. Thus, the analysis in this case will focus on the final clause of the quoted portion of Rule 56(c), that is, on whether *"the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.* 56(c) (emphasis added).

■ In *Coonley,* this court recognized that primarily legal issues generally, and contract interpretation questions specifically, are issues amenable to summary disposition. *Coonley,* 956 F.Supp. at 844; *accord Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995) (in an ERISA plan interpretation case, the court observed, "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate," citing *Crain v. Board of Police Comm'rs,* 920.F.2d 1402, 1405–06 (8th Cir.1990)); *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 564–65 (7th Cir.1995) ("Summary judgment is particularly appropriate in cases involving the interpretation of contracts."); *Mumford v. Godfried,* 52 F.3d 756, 759 (8th Cir.1995) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *McPeek v. Beatrice Co.,* 936 F.Supp. 618, 626 (N.D.Iowa 1996) (ERISA contract interpretation case before the court on summary judgment which quotes *Murphy,* 61 F.3d at 564–65). Similarly, the court now concludes that statutory interpretation-particularly interpretation of the effect of a statute where facts are undisputed-is primarily a legal question amenable to summary judgment. *See, e.g., United States v. Carr,* 66 F.3d 981, 983 (8th Cir.1995) (statutory interpretation is a question of law reviewed

---

**6.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach v. Hobert Sears Co., II,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

*de novo* ); *United States v. Moore,* 38 F.3d 977, 979 (8th Cir.1994) (the task of statutory interpretation "is one best placed in the hands of the trial judge," because it is a question of law); *United States v. Brummels,* 15 F.3d 769, 771 (8th Cir.1994) (explaining that, while findings of fact is reviewed for clear error, "[a]s to application of facts to the legal interpretation of [a statute], the standard of review is *de novo* "). Thus, because the issues before the court are essentially legal and do not turn on the existence or non-existence of a genuine issue of material fact, summary disposition may be particularly appropriate. *See Coonley,* 956 F.Supp. at 845.

Nonetheless, the court will survey the undisputed factual background for this litigation before turning to its analysis of the legal questions presented.

### III. FACTUAL BACKGROUND

Because this matter is before the court on cross-motions for summary judgment, both parties have submitted statements of undisputed facts, which show that there is no genuine issue as to the following material facts. Prudential is the assignee of a Note and Mortgage executed by the Powers Partnership on August 17, 1992, in favor of Midwest Mortgage and Credit Consultants (Midwest Mortgage) for a loan in the amount of $262,000. Prudential is now the holder and owner of the Note. Although it originally took a contrary position, Prudential does not now dispute that part of the loan proceeds were used to purchase agricultural land, and therefore Prudential concedes that Iowa Code § 535.9, whatever its effect, is applicable to the August 17, 1992, Note. The maturity date of the Note is July 1, 2007.

The Note includes the following language in boldface type just above the signature lines:

**PAYMENTS IN EXCESS OF THE PAYMENTS PROVIDED FOR IN THIS NOTE ARE NOT PERMITTED.**

Complaint, ¶ 8; Answer ¶ 8; App. Ex. 1. Notwithstanding this language in the Note, on January 14, 1995, the Powers Partnership gave Prudential written notification that the Powers Partnership intended to prepay the balance of principal and accrued interest owing on the Note in reliance on the authority of Iowa Code § 535.9. On January 31, 1994,

Prudential responded in writing that it would not accept a prepayment of the Note as demanded by the Powers Partnership on the basis of the contractual prohibition on prepayment.

This litigation followed.

### IV. LEGAL ANALYSIS

The court's legal analysis centers on the question, is a contract term prohibiting prepayment of a loan used at least in part to purchase agricultural land enforceable under Iowa law? The arguments of the parties are essentially as follows. Prudential argues that the Note cannot be prepaid, because it contains an express "no prepayment" clause, and that "no prepayment" clause merely embodies Iowa common-law recognition of the "perfect tender in time" rule. The Powers Partnership counters that the "no prepayment" clause is unenforceable under Iowa Code § 535.9, which prohibits "penalties and charges" on prepayment of loans used in part to purchase agricultural land, because a "no prepayment" clause is "tantamount" to a penalty on prepayment. Thus, the court's analysis proceeds in three stages: What does the contract provide, is it consonant with Iowa common law, and has the common-law rule been abrogated by statute?

#### A. The Contract

**1. Iowa rules of contract construction and interpretation**

Iowa applies familiar rules of construction and interpretation to contracts. In construing a written contract, the intent of the parties controls. *Kerndt v. Rolling Hills Nat'l Bank,* 558 N.W.2d 410, 416 (Iowa 1997); *see also Howard v. Schildberg Constr. Co., Inc.,* 528 N.W.2d 550, 554 (Iowa 1995) ("Our goal in interpreting [a contract] is to ascertain the meaning and intention of the parties," citing *Power Eng'g & Mfg., Ltd. v. Krug Int'l,* 501 N.W.2d 490, 493 (Iowa 1993)); *Kuehl v. Freeman Bros. Agency, Inc.,* 521 N.W.2d 714, 719 (Iowa 1994) ("In the construction of contracts, the cardinal principle is that the intent of the parties must control."); *Lange v. Lange,* 520 N.W.2d 113, 119 (Iowa 1994) ("Under the cardinal rule of contract construction, the parties' intent controls."). Except in cases of ambiguity, the

parties' intent is determined by what the contract itself says. *Id.* (citing *Iowa R.App. P.* 14(f)(14)); *Howard,* 528 N.W.2d at 554; *Kuehl,* 521 N.W.2d at 719; *Lange,* 520 N.W.2d at 119. "Consequently, where the intent of the parties is expressed in clear and unambiguous language, we enforce the contract as written." *Howard,* 528 N.W.2d at 554; *accord Lange,* 520 N.W.2d at 117 ("When a contract is not ambiguous, we are obliged to enforce it as written."); *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 863 (Iowa 1991).

 However, ambiguities in a contract are strictly construed against the drafter of the contract. *Kerndt,* 558 N.W.2d at 416; *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 862–63. A contract term is ambiguous if, after application of rules of interpretation to the face of the instrument, a genuine uncertainty exists as to which of two reasonable constructions is proper. *See Jensen v. Jefferson County Mut. Ins. Ass'n,* 510 N.W.2d 870, 871 (Iowa 1994) (quoting *Connie's Constr. Co., Inc. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975)); *Motor Club of Iowa Ins. Co. v. Iowa Mut. Ins. Co.,* 508 N.W.2d 634, 636 (Iowa 1993); *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.,* 475 N.W.2d 607, 619 (Iowa 1991); *Iowa Fuel & Minerals v. Board of Regents,* 471 N.W.2d 859, 863 (Iowa 1991); *West Trucking Line, Inc. v. Northland Ins. Co.,* 459 N.W.2d 262, 263 (Iowa 1990); *Service Unlimited v. Elder,* 542 N.W.2d 855, 857 (Iowa.Ct.App.1995); *Nepstad Custom Homes Co. v. Krull,* 527 N.W.2d 402, 405 (Iowa.Ct. App.1994) (citing *Iowa Fuel & Minerals* ). Thus, the test for ambiguity is an objective one: "Is the language fairly susceptible to two interpretations?" *Met–Coil Sys. Corp. v. Columbia Casualty Co.,* 524 N.W.2d 650, 658 (Iowa 1994); *Cincinnati Ins. Co. v. Hopkins Sporting Goods, Inc.,* 522 N.W.2d 837, 839 (Iowa 1994); *Gracey v. Heritage Mut. Ins. Co.,* 518 N.W.2d 372, 373 (Iowa 1994); *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 863; *Krull,* 527 N.W.2d at 405.

 When interpreting a contract, the court seeks to give effect to the language of the entire agreement in accordance with its commonly accepted and ordinary meaning. *Lewis Central Educ. Ass'n v. Lewis Central Community Sch. Dist.,* 559 N.W.2d 19, 22

(Iowa 1997) (citing *Home Fed. Sav. & Loan Ass'n v. Campney,* 357 N.W.2d 613, 617 (Iowa 1984)); *Farmers & Merchants Sav. Bank v. Vandenberg Chevrolet–Buick, Ltd.,* 523 N.W.2d 211, 213 (Iowa 1994); *Lange,* 520 N.W.2d at 119. Thus, an interpretation that gives a reasonable meaning to all terms is preferred to one that renders a term superfluous or of no effect. *Kerndt,* 558 N.W.2d at 416; *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 863. The context in which an agreement is made may influence interpretation when appropriate. *Lewis Central Educ. Ass'n,* 559 N.W.2d at 22 (citing *Campney,* 357 N.W.2d at 617; *Setterberg v. Sheaffer Eaton, Inc.,* 473 N.W.2d 217, 220 (Iowa.Ct. App.1991)). This is so, because a court should not give a contract a meaning that the parties did not in fact intend. *Lange,* 520 N.W.2d at 119.

### 2. *Construction and interpretation of the contract*

 As the court mentioned above, in the factual background section of this ruling, the Note in question provides as follows:

**PAYMENTS IN EXCESS OF THE PAYMENTS PROVIDED FOR IN THIS NOTE ARE NOT PERMITTED.**

Complaint, ¶ 8; Answer ¶ 8; App. Ex. 1. Giving the terms of this clause their commonly accepted and ordinary meaning, *Lewis Central Educ. Ass'n,* 559 N.W.2d at 22; *Farmers & Merchants Sav. Bank,* 523 N.W.2d at 213; *Lange,* 520 N.W.2d at 119, it is readily apparent that the clause forbids prepayment of the loan, because any prepayment would be a "payment[ ] in excess of the payments provided for in this note." Complaint, ¶ 8; Answer ¶ 8; App. Ex. 1. Nor does this interpretation render any other express term of the contract superfluous or of no effect. *Kerndt,* 558 N.W.2d at 416; *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 863. Furthermore, the Powers Partnership has proffered no evidence suggesting that this interpretation of the clause is at odds with the context in which the Note was made. *Cf. Lewis Central Educ. Ass'n,* 559 N.W.2d at 22 (context in which an agreement is made may influence interpretation). Thus, nothing suggests that such a reading gives the clause

a meaning that the parties did not in fact intend. *Lange*, 520 N.W.2d at 119. Because the court finds that this clause of the Note expressly prohibits prepayments, for the sake of simplicity, the court will hereafter refer to this clause as the "no prepayment" clause of the Note.

The Powers Partnership, however, has advanced an argument that the "no prepayment" clause is ambiguous. That argument runs something like this: Iowa Code § 535.9 is read into the contract as a matter of law; therefore, if that code section's prohibition on prepayment penalties prohibits "no prepayment" clauses, then the provisions of the Note are ambiguous; because the Note is ambiguous, it should be construed against the drafter, Prudential, to permit the Powers Partnership to prepay the,note. Defendant's Memorandum of Authorities in Support of Motion for Partial Summary Judgment, p. 8. This argument, however, fails to establish that any terms of the Note are ambiguous.

As mentioned above, the test for ambiguity of a contract under Iowa law is an objective one: "Is the language fairly susceptible to two interpretations?" *Met–Coil Sys. Corp.*, 524 N.W.2d at 658; *Cincinnati Ins. Co.*, 522 N.W.2d at 839; *Gracey*, 518 N.W.2d at 373; *Iowa Fuel & Minerals, Inc.*, 471 N.W.2d at 863; *Krull*, 527 N.W.2d at 405. The Powers Partnership has proffered no second meaning for the "no prepayment" clause at all, let alone any that would *permit* prepayment of the Note. The language of the "no prepayment" clause of the contract simply is *not* fairly susceptible to two interpretations. *See Met–Coil Sys. Corp.*, 524 N.W.2d at 658; *Cincinnati Ins. Co.*, 522 N.W.2d at 839; *Gracey*, 518 N.W.2d at 373; *Iowa Fuel & Minerals, Inc.*, 471 N.W.2d at 863; *Krull*, 527 N.W.2d at 405. Nor does any other express term of the Note conflict with the "no prepayment" clause so as to render that clause ambiguous. *See Lewis Central Educ. Assn*, 559 N.W.2d at 22 (the court must seek to give effect to the language of the entire agreement); *Farmers & Merchants Sav. Bank*, 523 N.W.2d at 213; *Lange*, 520 N.W.2d at 119. Thus, the court cannot find that the "no prepayment" clause of the Note is ambiguous.

As the court sees it, the proper question is not whether Iowa Code § 535.9, when read into the contract, somehow renders the "no prepayment" clause ambiguous, but whether Iowa Code § 535.9, or indeed, some common-law rule, conflicts with the "no prepayment" clause so as to render the "no prepayment" clause unenforceable as contrary to law. *See, e.g., Smith Fertilizer & Grain Co. v. Wales*, 450 N.W.2d 814, 815 (Iowa 1990) (citing Restatement (Second) of Contracts, § 178, as "recogniz[ing] ... that, where the regulatory statute itself denies enforceability of the bargain, the statute will control and not general contract law."); *First Nat'l Bank of Creston v. Creston Implement Co.*, 340 N.W.2d 777, 780 (Iowa 1983) (recognizing that, although bills and notes are generally described as contracts subject to fundamental rules governing contract law, loan obligations could be rendered unenforceable by statutes regulating loans); *CBS Real Estate of Cedar Rapids, Inc. v. Harper*, 316 N.W.2d 170, 174–75 (Iowa 1982) (recognizing that another statute in chapter 535, Iowa Code § 535.5, could render usurious transactions pursuant to a contract not void, but unenforceable beyond the legal interest rate); *Amana Soc'y v. Colony Inn, Inc.*, 315 N.W.2d 101, 114 (1982) (citing cases holding that contracts in violation of statutes are unenforceable, and distinguishing contracts rendered unenforceable by a statute and contracts that exist collaterally to a statute, and thus are not unenforceable). Indeed, the Powers Partnership's argument about ambiguity suggests that the *statute,* not the· contract, is ambiguous, because it suggests that there is some uncertainty about whether the prohibition on prepayment penalties in Iowa Code § 535.9 includes a prohibition on "no prepayment" clauses. The court will return to the questions of whether the "no prepayment" clause is unenforceable under either Iowa statutory or common law—and the further question of whether Iowa Code § 535.9 is ambiguous as to the extent of its prohibitions—in subsequent sections of this ruling.

For now, finding no ambiguity, and indeed, finding that the "no prepayment" clause expressly bars prepayment of the Note, the parties' intent is determined by what the contract itself says. *Kerndt,* 558 N.W.2d at 416 (citing *Iowa R.App. P.* 14(f)(14)); *Howard,* 528 N.W.2d at 554; *Kuehl,* 521 N.W.2d

at 719; *Lange,* 520 N.W.2d at 119. Because the contract expressly states that prepayment of the Note is not permitted, the court must conclude that it was the parties' intent that no prepayments would be permitted. That intent of the parties controls, *Kerndt,* 558 N.W.2d at 416; *see also Howard,* 528 N.W.2d at 554; *Kuehl,* 521 N.W.2d at 719; *Lange,* 520 N.W.2d at 119, and the contract—unless rendered unenforceable by statutory or common law—must be enforced as written. *See Howard,* 528 N.W.2d at 554 (unambiguous contract must be enforced as written); *Lange,* 520 N.W.2d at 117 (same); *Iowa Fuel & Minerals, Inc.,* 471 N.W.2d at 863 (same).

### B. The Common–Law Rule On Prepayment

The parties next raise the question of whether the "no prepayments" clause comports with or violates the common-law rule on prepayment. Although divining the meaning of a contract is a familiar task for courts, for which oft-stated rules provide guidance, divining what the court of another jurisdiction will hold to be its rule of law on an issue of first impression is another matter. Yet, Prudential contends that the question of which legal rule the Iowa Supreme Court would hold is applicable to the enforceability of the "no prepayment" clause at issue here is not truly one of first impression, because Iowa courts have already embraced the rule Prudential favors, the so-called "perfect tender in time" rule. Thus, Prudential asserts that the court's task is not one of divination, but merely one of application of the governing rule of law.

Prudential contends that Iowa adopted the rule that a mortgagor has no right to pay off its obligations prior to a stated maturity date in the absence of a specific clause in the loan agreement permitting prepayment—the so-

called "perfect tender in time" rule—in *Anderson v. Haskell,* 45 Iowa 45, 47 (1876), and reaffirmed this common-law rule three years after Iowa Code § 535.9 was enacted in *Lett v. Grummer,* 300 N.W.2d 147, 150 (Iowa 1981), with tacit endorsement in *In re Marriage of Callenius,* 309 N.W.2d 510, 515 (Iowa 1981). Although the Powers Partnership concedes that the "perfect tender in time" rule is the common-law rule in Iowa, Defendant's Memorandum Brief in Resistance to Plaintiff's Motion for Summary Judgment, p. 6, it contends that Iowa Code § 535.9 superseded the common-law rule. It contends further that neither *Lett* nor *Callenius* reasonably stands for the proposition that the common-law rule was not superseded, because neither decision considered the applicability of Iowa Code § 535.9 to the transactions in question.

However, the court concludes that it need not reach the issue of what common-law rule would apply in the absence of a contract clause governing prepayment. The court has found that the Note expressly and unambiguously *prohibits* prepayment, and the Powers Partnership concedes that the "perfect tender in time" rule, which accords with this contract clause, is (or was) the common-law rule in Iowa. Furthermore, Prudential now concedes that Iowa Code § 535.9 is applicable to the loan in question,[7] although it disputes the effect of the statute. Consequently, the court need only predict whether the Iowa Supreme Court would hold that the express terms of the Note are in violation of the statute, without attempting to predict what common-law rule might apply in the absence of an express "no prepayment" clause or in the absence of the statute.

### C. The Statute

Because the Powers Partnership's argument that the "no prepayment" clause of the

---

7. In its Response to Defendant's Statement of Undisputed Facts, filed July 2, 1997, Prudential stated that, for the purposes of the Powers Partnership's motion for partial summary judgment, and presumably for the purposes of Prudential's own motion for summary judgment, Prudential "is not disputing the Statement of Undisputed Facts submitted by Defendant," which includes a statement that the loan was used in part to purchase agricultural land. Furthermore, in its brief in resistance to the Powers Partnership's motion for partial summary judgment, Pruden-

tial specifically conceded that, contrary to its position in either its complaint or its brief in support of its own motion for summary judgment, proceeds of the Note were used, at least in part, to purchase agricultural land, and hence "Prudential is not disputing that a portion of the Note proceeds were used in such a manner that the Note falls within Iowa Code § 535.9." Prudential's Memorandum in Resistance to Defendant's Motion for Partial Summary Judgment, p. 6 & n. 1.

Note is unenforceable relies principally upon a statute never interpreted by the Iowa Supreme Court, it is at this stage of its analysis that the court finds the art of divination is most called upon. The court must not only "predict, as best [it] can, how that [state high] court would decide the issue," *Brandenburg*, 23 F.3d at 1440, but must also divine legislative intent behind the statute from only the slightest of hints.

The provision of the Iowa Code upon which the Powers Partnership relies as rendering the "no prepayment" clause in the Note unenforceable provides, in pertinent part, as follows:

535.9. Payment penalties on loans secured by real estate mortgages prohibited.

1. As used in this section, "loan" means a loan of money which is wholly or in part to be used for the purpose of purchasing real property which is a single-family or a two-family dwelling occupied or to be occupied by the borrower, or for the purpose of purchasing agricultural land. "Loan" includes the refinancing of a contract of sale, and the refinancing of a prior loan, whether or not the borrower also was the borrower under the prior loan, and the assumption of a prior loan.

2. Whenever a borrower under a loan prepays part or all of the outstanding balance of the loan the lender shall not receive an amount in payment of interest which is greater than the amount determined by applying the rate of interest agreed upon by the lender and the borrower to the unpaid balance of the loan for a period of time during which the borrower had the use of the money loaned; and *the lender shall not impose any penalty or other charge in addition to the amount of interest due* as a result of the repayment of that loan at a date earlier than is required by the terms of the loan agreement. A lender may, however, require advance notice of not more than thirty days of a borrower's intent to repay the entire outstanding balance of a loan if the payment of that balance, together with any partial prepayments made previously by the borrower, will result in the repayment of the loan at a date earlier than is required by the terms of the loan agreement.

Iowa Code § 535.9(1) & (2) (emphasis added). The Powers Partnership contends that Iowa Code § 535.9 prohibits not only "any penalty or other charge" on prepayment of a loan to which it applies, but also prohibits a complete bar on prepayment, because a "no prepayment" clause is "tantamount" to a penalty or charge. Prudential contends that if the legislature intended to prohibit "no prepayment" clauses, it could and would have said so. Furthermore, Prudential contends that a statute barring "no prepayment" clauses was in fact enacted at the same time as Iowa Code § 535.9, but was subsequently allowed to lapse. Finally, there are no Iowa decisions interpreting the statute, and Prudential contends that the out-of-state decisions the Powers Partnership asserts support its reading of the statute are inapplicable. However, before this court even considers what the courts of other jurisdictions have said about statutes that may or may not be comparable, the court must begin its analysis of the pertinent Iowa statute with a survey of the Iowa rules for statutory interpretation.

### 1. *Iowa rules of statutory interpretation*

■ The touchstone of statutory interpretation under Iowa law is legislative intent. *Johnson v. Johnson*, 564 N.W.2d 414, 417 (Iowa 1997) ("In interpreting statutes, our ultimate goal is to determine what the legislature intended."); *State v. White*, 563 N.W.2d 615, 617 (Iowa 1997) ("In interpreting statutes, we strive to discern and give effect to the legislature's intent."); *Craig Foster Ford v. Department of Transp.*, 562 N.W.2d 618, 623 (Iowa 1997) ("Our task in interpreting the statute is to give effect to the intention of the legislature."); *City of West Branch v. Miller*, 546 N.W.2d 598, 602 (Iowa 1996) ("In interpreting statutes, our ultimate goal is to determine legislative intent," citing *Peffers v. City of Des Moines*, 299 N.W.2d 675, 678 (Iowa 1980)); *Citizens' Aide/Ombudsman v. Miller*, 543 N.W.2d 899, 902 (Iowa 1996) ("[T]he ultimate goal of statutory interpretation is to give effect to the intent of the legislature," citing *Beier Glass Co. v. Brundige*, 329 N.W.2d 280, 283 (Iowa 1983), and Iowa R.App. P. 14(f)(g)); *Iowa Dept. of Transp. v. Iowa Dist. Court for*

*O'Brien County,* 540 N.W.2d 40, 42 (Iowa 1995) ("In interpreting statutory language, our goal is to ascertain and give effect to the intention of the legislature," citing *Wellsburg–Steamboat Rock v. Iowa Dep't of Educ.,* 523 N.W.2d 749, 751 (Iowa 1994), and "[o]ur construction of the statute must be reasonably made and carry out the legislative intent," citing *Olson v. Prosoco, Inc.,* 522 N.W.2d 284, 293 (Iowa 1994)); *Holiday Inns Franchising, Inc. v. Branstad,* 537 N.W.2d 724, 728 (Iowa 1995). "The words used in the statute evidence that intent." *White,* 563 N.W.2d at 617.

Therefore, when the language of a statute is plain and its meaning is clear, Iowa courts "should not reach for meaning beyond [the statute's] express terms. . . . Nor should we resort to statutory rules of construction to determine legislative intent." *Miller,* 546 N.W.2d at 602 (internal citation omitted). As the Iowa Supreme Court very recently explained,

> Generally, we are to use rules of statutory construction as aids in determining legislative intent only when the terms of the statute are ambiguous. *[Le Mars Mut. Ins. Co. v. Bonnecroy,* 304 N.W.2d 422, 424 (Iowa 1981) ]. We are to give precise and unambiguous language its plain and rational meaning as used in the statute. *Id.* We must look at what the legislature said rather than what it should or might have said. *Iowa R.App. P. 14(f)(13); Le Mars Mut. Ins. Co.,* 304 N.W.2d at 424.

*Johnson,* 564 N.W.2d at 417. Undefined words in a statute are to be given their plain and ordinary meaning, and the language is to be interpreted fairly and sensibly in accordance with the plain meaning of the words used by the legislature. *State ex rel. Attorney General v. Terry,* 541 N.W.2d 882, 887–88 (Iowa 1995); *accord White,* 563 N.W.2d at 617 ("[I]n the absence of a legislative definition of a term or a particular meaning in the law, we give words their ordinary meaning," and "[t]he dictionary provides a ready source for ascertaining the common and ordinary meaning of a word.").

However, when the statute's language is not clear and plain, Iowa courts "do resort to well-established rules of statutory construction." *Miller,* 546 N.W.2d at 602; *accord Johnson,* 564 N.W.2d at 417 (the court may resort to rules of construction to construe words in the statute); *United Fire & Cas. Co. v. Acker,* 541 N.W.2d 517, 519 (Iowa 1995) ("We engage in statutory construction only when the meaning of statutory provisions is unclear," citing Iowa Code § 4.6 and *Krull v. Thermogas Co.,* 522 N.W.2d 607, 612 (Iowa 1994)). "A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Johnson,* 564 N.W.2d at 417; *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728. Ambiguity may arise either from the meaning of particular words or from the general scope and meaning of a statute when all its provisions are examined. *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728.

When ambiguity arises,

> [o]ne such rule provides that we are bound by what the legislature said, rather than what it should or might have said. *State v. Jones,* 464 N.W.2d 241, 242 (Iowa 1990); Iowa R.App. P. 14(f)(13). We may not, under the guise of statutory construction, enlarge or otherwise change the terms of a statute. *Jones,* 464 N.W.2d at 242. Finally, "[w]e may consider the language used in the statute, the objects sought to be accomplished, the evils and mischiefs sought to be remedied and place a reasonable construction on the statute which will best effect its purpose rather than one which will defeat it." *Peffers,* 299 N.W.2d at 678.

*Miller,* 546 N.W.2d at 602; *see also Burton v. University of Iowa Hosps. & Clinics,* 566 N.W.2d 182, 189 (Iowa 1997) (in seeking legislative intent, "strained, impractical, and absurd results that defeat the purpose of the legislation in question are to be avoided," citing Iowa Code § 4.6(5), which states that the court may consider the consequences of a particular construction); *Johnson,* 564 N.W.2d at 417 ("We must look to what the legislature said rather than what it should or might have said."); *Livingood v. Negrete,* 547 N.W.2d 196, 197 (Iowa 1996) (" 'In seeking legislative intent, the subject matter, effect, reason for the statute and consequences of proposed interpretations must all be considered,' " quoting *State ex rel. Hager v. Iowa Nat'l Mut. Ins.,* 430 N.W.2d 420, 422 (Iowa

1988)); *Acker,* 541 N.W.2d at 519 (citing identical rules to those quoted from *Miller* above, and adding that "[w]e will not construe a statute in a way that would produce impractical or absurd results," and that the court must look at the whole statute and not the separate parts); *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728 (citing similar standards). Furthermore, when confronted with ambiguous statutory provisions, Iowa courts are permitted to consider the legislative history. *Citizen's Aide/Ombudsman,* 543 N.W.2d at 903 (citing Iowa Code § 4.6(3)).[8]

▮▮▮▮▮ Legislative intent is "expressed by omission as well as by inclusion.'" *Wiebenga v. Iowa Dep't of Transp.,* 530 N.W.2d 732, 735 (Iowa 1995) (quoting *Barnes v. Iowa Dep't of Transp.,* 385 N.W.2d 260, 263 (Iowa 1986)). Thus, if the legislature had intended a statute to include a prohibition on certain conduct, the Iowa Supreme Court believes the legislature would have specifically mentioned that conduct, but where it did not, the statutory provision is deemed not to apply to that conduct. *Id.* Similarly, if the legislature had intended one statutory provision to apply without regard to another statutory provision already in force, it would have said so. *See Federal Land Bank of Omaha v. Bryant,* 445 N.W.2d 761, 762 (Iowa 1989); *Federal Land Bank of Omaha v. Sleister,* 444 N.W.2d 504, 506 (Iowa 1989).

▮▮▮▮ Other rules of interpretation are also applicable to determining the relationship among statutes. For example, Iowa Code § 4.8 provides that "[i]f statutes enacted at the same time or different sessions of the legislature are irreconcilable, the statute latest in date of enactment by the general assembly prevails." *See also Citizens' Aide/Ombudsman,* 543 N.W.2d at 902–03 (quoting this statutory provision for rules of

interpretation). However, "[w]hen statutes relate to the same subject matter or to closely allied subjects they are said to be in pail materia and must be construed, considered and examined in light of their common purpose and intent so as to produce a harmonious system or body of legislation." *Farmers Co-op. Co. v. DeCoster,* 528 N.W.2d 536, 538 (Iowa 1995); *accord State v. McSorley,* 549 N.W.2d 807, 809 (Iowa 1996); *State v. Peters,* 525 N.W.2d 854, 857 (Iowa 1994); *Schuler v. Rodberg,* 516 N.W.2d 902, 903–04 (Iowa 1994). The Iowa Supreme Court has explained,

Statutes are in pari materia when they

> relate to the same person or thing, or to the same class of persons or things, or [when they] have a common purpose.... [I]t is well established that in the construction of a particular statute, or in the interpretation of its provisions, ... [all other] statutes which are in pari materia, should be read in connection with it; and such related statutes may or should be construed together as though they constituted one law, that is, they must be construed as one system.... This rule of construction applies although the statutes to be construed together were enacted at different times, and contain no reference to one another; and it is immaterial that the statutes are found in different chapters of the ... statutes and under different headings.

82 C.J.S. *Statutes* § 366, at 801–08 (1953). In addition, "the fact that one of the statutes is a special or particular, and the other a general, one, does not preclude them from being in pari materia." 73 Am. Jur.2d *Statutes* § 189, at 389 (1974). Stat-

---

8. These rules for interpretation of ambiguous statutes are drawn from or parallel Iowa Code § 4.6, which provides as follows:

 If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:
 1. The object sought to be attained.
 2. The circumstances under which the statute was enacted.
 3. The legislative history.

 4. The common law or former statutory provisions, including laws upon the same or similar subjects.
 5. The consequences of a particular construction.
 6. The administrative construction of the statute.
 7. The preamble or statement of policy.
 Iowa Code § 4.6. *See also Johnson,* 564 N.W.2d at 417 (citing other provisions of Iowa Code Ch. 4 as stating rules of statutory construction and interpretation).

**1210**

utes, however, are not in pan materia when they are inconsistent.

Courts resort to the rule of in pan materia only in search of legislative intent. It is "only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and ... it cannot be invoked where the language of a statute is clear and unambiguous." 82 C.J.S. *Statutes* § 366, at 813 (1953).

*Peters*, 525 N.W.2d at 857–58.

▇▇▇▇ Although, as *Peters* states, the *in pari materia* rule applies even when statutes have been enacted in different sessions of the legislature, the rule does apply with particular force when the statutes in question were passed at the same session of the legislature. *DeCoster*, 528 N.W.2d at 538; *accord McSorley*, 549 N.W.2d at 809. Nonetheless, it is assumed that the legislature's use of terms is in the accepted judicially established context unless there is clear evidence to the contrary, and furthermore, it is assumed that when the legislature enacts a provision, "it has available all the other provisions relating to the same subject matter whether in the same statute or in a separate act." *Id.* Therefore, it is reasonable to assume a definition in or the meaning of one statute is noted by the legislature in enacting another statute and to presume that the legislature "does not deliberately enact inconsistent provisions when it is cognizant of them both, without expressly recognizing the inconsistency." *Id.*

### 2. Interpretation of the statute
#### a. Plain meaning

▇▇▇▇ As noted above, in construing or interpreting Iowa Code § 535.9, this court must begin with the plain meaning of the statute as evidencing the intent of the legislature. *See, e.g., Johnson*, 564 N.W.2d at 417 ("In interpreting statutes, our ultimate goal is to determine what the legislature intended."); *White*, 563 N.W.2d at 617 ("The words used in the statute evidence [legislative] intent."). Only if the meaning of the statute is ambiguous will the court turn to other aids to interpret the statute's meaning. *Miller*, 546 N.W.2d at 602 (when the language of a statute is plain and its meaning is clear, Iowa courts "should not reach for meaning beyond [the statute's] express terms.... Nor

should we resort to statutory rules of construction to determine legislative intent.").

Although Iowa Code § 535.9 defines "loan," it does not define "penalty" or "charge." *See* Iowa Code § 535.9(1). Thus, there is no statutory definition of the critical terms fixing the particular intent of the legislature with regard to those terms. Hence, the court must give the terms "penalty" and "other charges," as undefined, words, their plain and ordinary meaning, interpreting the language of the statute fairly and sensibly in accordance with the plain meaning of the words used by the legislature. *Terry*, 541 N.W.2d at 887–88; *accord White*, 563 N.W.2d at 617 ("[I]n the absence of a legislative definition of a term or a particular meaning in the law, we give words their ordinary meaning."). The court will therefore avail itself of a dictionary as "a ready source for ascertaining the common and ordinary meaning of [these] word[s]." *White*, 563 N.W.2d at 617.

A "penalty" is defined, in the pertinent dictionary definition, as "the suffering or the sum to be forfeited to which a person subjects himself by agreement in case of nonfulfillment of stipulations" or as the "disadvantage, loss, or hardship due to some action." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 869 (1991). Similarly, the pertinent dictionary definitions of a "charge" include "expense, cost," or "the price demanded for something," or "a debit to an account." Plainly, both terms suggest, at least in the first instance, an *additional* cost beyond the normal terms of repayment in the event a borrower prepays a debt. This sense of the critical terms is confirmed by further language of the statute itself. Iowa Code § 535.9 specifies that "the lender shall not receive an amount in payment of interest *which is greater than the amount* determined by applying the rate of interest agreed upon by the lender and the borrower to the unpaid balance of the loan for a period of time during which the borrower had the use of the money loaned." Iowa Code § 535.9(2) (emphasis added). A "no prepayment" clause does not impose any *additional* cost upon a party; it merely holds the party to the terms of the bargain the party has ac-

cepted. Thus, a "no prepayment" clause does not fall within the plain meaning of a "penalty or other charge."

Furthermore, in the court's view, this reading of "penalty" or "charge" as referring to imposition of additional costs is not a "strained" reading of the statutory language, *see, e.g., Burton,* 566 N.W.2d at 189 (in seeking legislative intent, "strained, impractical, and absurd results that defeat the purpose of the legislation in question are to be avoided"); rather, a "strained" reading would be one that includes within the statutory prohibition on "penalties" and "charges" a prohibition on clauses that simply require the parties to adhere to the terms of their original bargain. The reading the Powers Partnership gives the statute turns a prohibition on additional costs into an affirmative permission to escape the plain repayment terms to which the Powers Partnership agreed in its contract. The court is hesitant to make the leap of faith that turns a statutory prohibition on penalties into an affirmative permission for advantages beyond the bargain of the parties.

#### b. Ambiguity

Although the court finds the Powers Partnership's reading of the statute is contrary to its plain meaning, for the sake of argument, the court will assume that "reasonable minds could differ or be uncertain as to the meaning of the statute," *Johnson,* 564 N.W.2d at 417; *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728, or that the general scope and meaning of the statute somehow give rise to an ambiguity, *cf. Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728 (ambiguity may arise either from the meaning of particular words or from the general scope and meaning of a statute when all its provisions are examined), and therefore the statute is ambiguous as to the extent of what it prohibits. Such ambiguity, the court finds, is readily dispelled.

Even if the court finds a statute is ambiguous, the court is bound by "what the legislature said, rather than what it should or might have said." *Johnson,* 564 N.W.2d at 417; *Miller,* 546 N.W.2d at 602. What the legislature expressly forbade in Iowa Code § 535.9 was "penalties" and "charges," not bars on prepayment. The court may not, under the guise of statutory construction, enlarge or otherwise change the terms of a statute. *Miller,* 546 N.W.2d at 602. Certainly, the legislature might have said baldly that borrowers covered by the statute have a right to prepay the loans defined in the statute. The legislature did not say so, *see Wiebenga,* 530 N.W.2d at 735 (legislative intent is " 'expressed by omission as well as by inclusion,' " quoting *Barnes,* 385 N.W.2d at 263), and it was not for want of ability to formulate such categorical language.

First, the court finds that the prohibitions of Iowa Code § 535.9 must be read *in pari materia* with a statute enacted at the same time with a similar purpose, regulation of agricultural loans. *See McSorley,* 549 N.W.2d at 809 (explaining the *in pari materia rule* and when it is applicable); *DeCoster,* 528 N.W.2d at 538 (same); *Peters,* 525 N.W.2d at 857–58 (same). In 1978, in the same act in which the pertinent parts of Iowa Code § 535.9 were enacted, the Iowa legislature also enacted another provision, which read as follows:

> 10. ADVANCE INTEREST ON PRE-PAYMENTS. Real estate loans on a single-family or a two-family dwelling or agricultural land *may be repaid in part or in full at any time* subject to the provisions of section thirteen (13) of this Act [Iowa Code § 535.9]....

Acts 1978 (67 G.A.) ch. 1160, § 10 (emphasis added). This provision establishes an unequivocal right for borrowers to prepay loans used to purchase agricultural land. However, this provision also made such prepayment subject to the requirements of Iowa Code § 535.9. Yet, this provision lapsed in February of 1980. Because § 10 of ch. 1190 was a specific, statutory authorization for repayments at any time, Iowa Code § 535.9, which was § 13 of the same act, and which only prohibits "penalties" and "other charges" on prepayment, cannot reasonably be read to establish a right to prepay covered loans at any time. If Iowa Code § 535.9, enacted as § 13 of ch. 1190, is also read to state a right to prepayment, § 10 becomes superfluous, but if the two sections are read together, they create a harmonious body of legislation, in which the one provision creates a right, and the other establishes conditions on the

exercise of that right. *DeCoster*, 528 N.W.2d at 538. Once again, this statutory right or prepayment has lapsed.

Second, where the legislature intended to retain a statutory right to prepay loans, it specifically did so. For example, Iowa Code § 533.16(11) still provides that "[r]eal estate loans on one-family to four-family dwellings may be repaid in part or in full at any time ...," and still makes such prepayment subject to the terms of Iowa Code § 535.9. Iowa Code § 533.16(11). The only conclusion to be drawn from the continuation of the right of prepayment on certain real estate loans for dwellings, but not on agricultural loans, is that the legislature did not intend borrowers on agricultural loans to have such a statutory right of prepayment. Thus, the rules of interpretation for ambiguous statutes also lead to the conclusion that Iowa Code § 535.9 does not create a *right* to prepay loans to which it applies.

### c. *Consequences of interpretation*

Finally, the Iowa Supreme Court requires courts interpreting Iowa statutes to consider the consequences of any particular interpretation. *See, e.g., Burton*, 566 N.W.2d at 189 (the court must avoid "strained, impractical, and absurd results that defeat the purpose of the legislation in question," and citing Iowa Code § 4.6(5), which admonishes the court to consider the consequences of a particular construction); *Miller*, 546 N.W.2d at 602 (the court must interpret a statute in light of " 'the objects sought to be accomplished, the evils and mischiefs sought to be remedied and place a reasonable construction on the statute which will best effect its purpose rather than one which will defeat it,' " quoting *Peffers*, 299 N.W.2d at 678). The first consequence with which the court must concern itself is, if Iowa Code § 535.9, as construed by this court, does not create a right or prepayment, what does it do?

That question is answered by returning to the relationship-between Iowa Code § 535.9, enacted as § 13 of ch. 1190 of the Acts of 1978, and § 10 of the same act, the section of the act that *temporarily* created an unequivocal right to prepay certain loans, but which lapsed in February of 1980. Reading Iowa Code § 535.9 *in pari materia* with the section establishing an unequivocal right of repayment makes clear that Iowa Code § 535.9

establishes *conditions* on prepayment of loans to which it applies, where prepayment is *otherwise* permitted, but Iowa Code § 535.9 itself creates no right to prepay the loan in question.

Nor does this reading of Iowa Code § 535.9 become absurd where one of the sections creating a right to prepay loans— such as § 10 of ch. 1190, which created such a statutory right of prepayment for agricultural loans—has lapsed. First, for loans, such as real estate loans for dwellings, where a statutory right to prepay continues to exist, *see* Iowa Code § 533.16(11), Iowa Code § 535.9 continues to state the conditions under which the right of prepayment may be exercised. *See* Iowa Code § 533.16(11) (specifically conditioning the right to prepayment created by that section on the requirements stated in Iowa Code § 535.9). For loans on which only a *contractual* right to prepayment exists, Iowa Code § 535.9 likewise continues to state the conditions under which the contractual right of prepayment may be exercised. *See* Iowa Code § 535.9 (stating that its conditions apply "[w]henever a borrower under a loan prepays part or all of the outstanding balance of the loan" without specifying the source of the right to prepay). However, Iowa Code § 535.9 never comes into operation where neither a statutory nor contractual right to prepayment exists. Such an interpretation is certainly reasonable. *Miller*, 546 N.W.2d at 602 (requiring a "reasonable construction"); *Iowa Dept of Transp.*, 540 N.W.2d at 42 (the court's construction of the statute "must be reasonably made.").

Nor is the court unmindful of the assertion in one case from another jurisdiction, upon which the Powers Partnership relies, that "a complete prohibition against prepayment is a penalty of the most extreme kind." *See Naumburg v. Pattison*, 103 N.M. 649, 711 P.2d 1387, 1390 (1985) (considering the effect of a statute that made certain loan contracts "requiring a penalty or premium for prepayment of the balance of the indebtedness" unenforceable). However, in *Naumburg*, the New Mexico Supreme Court provided no reasoning in support of this statement, merely asserting that it was "self-evident" and that the trial court had no difficulty concluding

that a prohibition on prepayment would be an unlawful penalty. *Id.* A more recent decision of the Texas Court of Appeals is just as conclusory as the *Naumburg* decision. *See Groseclose v. Rum,* 860 S.W.2d 554 (Tex.Ct. App.1993). In *Groseclose,* the court noted that the Consumer Credit Commissioner had concluded that it would be inconsistent with the intent of a statute prohibiting a "prepayment charge or penalty" to permit a "no prepayment" provision in a loan agreement. *Groseclose,* 860 S.W.2d at 557. Citing no authority whatsoever for its conception of legislative intent, the Texas Court of Appeals simply agreed with the commissioner's opinion and held that

> the legislative intent of article 5069–1.07(f) is to protect homeowners by allowing them to prepay loans when they finance homes at high rates of interest. This intent would be frustrated if "no prepayment" clauses were enforced.

*Id.* at 557. Such conclusory interpretations carry little persuasive weight, at least where the language and context of the Iowa statute prohibiting prepayment penalties and charges establish a different legislative intent.[9]

In a more careful analysis, the North Carolina Supreme Court considered the effect of a statute prohibiting prepayment fees on "no prepayment" clauses. *See Hatcher v. Rose,* 329 N.C. 626, 407 S.E.2d 172, 175 (1991). In a prior ruling, the North Carolina Court of Appeals had rejected the notion that a statute prohibiting "prepayment fees" created a statutory right to prepay a loan, because "[i]f the General Assembly . . . intended to amend the common law regarding prepayment of loans where the loan agreement is silent, they could have used the straightforward and unequivocal language subsequently enacted. . . ." *Hatcher v. Rose,* 97 N.C.App. 652, 389 S.E.2d 442, 444 (1990). The Court of Appeals therefore upheld the lender's right to refuse prepayment. *Id.* The North Carolina Supreme Court reversed, after survey-

ing the evolution of the statute forbidding prepayment fees, N.C. Gen.Stat. § 24–1.1. *Hatcher,* 407 S.E.2d at 175. The court concluded that North Carolina had never adopted the "perfect tender in time" rule, and state decisions and statutes demonstrated a presumption that prepayment was permitted *where the contract was silent on prepayment. Hatcher,* 407 S.E.2d at 176. However, the ruling in *Hatcher* does not suggest that the statute prohibiting prepayment fees *created* a right to prepay over explicit contract terms prohibiting prepayment, only that the statute forbids prepayment "fees" where prepayment is *otherwise* permitted by the common law. Thus, *Hatcher* does not support the reading advocated by the Powers Partnership. If anything, that ruling supports a distinction between a prohibition on prepayment penalties and the creation of a right to prepay.

Nonetheless, looking at the consequences of this court's interpretation, the Powers Partnership contends that the construction of Iowa Code § 535.9 adopted by the court "eviscerates the effect of the statute," because "any farm lender that wishes to avoid the prohibition on prepayment penalt[ies] . . . [in] Section 535.9, *Code of Iowa,* need only insert an absolute prepayment prohibition in its Note, and then, when refinancing is sought by the borrower, renegotiate a monetary after-the-fact penalty of an additional amount to allow the borrower to pay off the Note." Defendant's Memorandum Of Authorities In Support Of Motion For Partial Summary Judgment, p. 10. Yet, this argument assumes that the purpose of the statute is to permit prepayment, when the plain meaning of the statute and its interplay with other statutes shows that the purpose of the statute is to establish conditions on prepayment where the right of prepayment is *otherwise* established, by statute or contract. Nor has the Powers Partnership established that

---

9. In another decision of the New Mexico Supreme Court, *Los Quatros, Inc. v. State Farm Life Ins. Co.,* 110 N.M. 750, 800 P.2d 184 (1990), the lender simply conceded that an absolute prohibition on prepayment is equivalent to a prepayment penalty. *Los Quatros,* 800 P.2d at 190 n. 6. Thus, *Los Quatros* adds nothing to the soundness

of the reasoning behind the decision of the New Mexico Supreme Court in *Naumburg.*

Although an unpublished decision of our sister district, relying on *Naumburg* and *Los Quatros,* also held that Iowa Code § 535.9 prohibits "no prepayment" clauses, for the reasons stated herein, this court must respectfully disagree.

there is any absolute right to renegotiate a loan.

Indeed, the consequences of the court's interpretation are essentially the same as the consequences of the common-law rule the Powers Partnership concedes would govern in Iowa in the absence of any statute, the "perfect tender in time" rule. As the Maryland Court of Special Appeals recently explained,

> The justification for this rule is that if the lender is forced to accept prepayment which it did not bargain for, it would be exposed to a lesser than anticipated rate of return, possibly adverse tax consequences, and added reinvestment costs.... 
>
> Thus, when sophisticated parties bargain in a commercial setting, the lender may refuse to accept prepayment unless the contract so allows.

*Metropolitan Life Ins. Co. v. Promenade Towers Mut. Hous. Corp.*, 84 Md.App. 702, 581 A.2d 846, 850 (1990) (citations and footnote omitted).

The Maryland Supreme Court affirmed, holding that, under Maryland common law, a mortgagor or grantor under a deed of trust payable at a fixed date or dates in the future, does not have a right to prepay, absent provision for prepayment in the loan contract. *Promenade Towers Mut. Hous. Corp. v. Metropolitan Life Ins. Co.*, 324 Md. 588, 597 A.2d 1377, 1384 (1991). The court then rejected arguments that this common-law rule should be changed, because the legislature had recently adopted a presumption of a right to prepay only as to non-commercial mortgages. *Id.* at 1385. The court also rejected arguments that a presumption against prepayment interfered with the alienability of land, because that analysis looked only at the debtor's side of the transaction, while for lenders, particularly commercial lenders and secondary-market mortgagees, the purpose of "no prepayment" rules was to secure investment income. *Id.* The Maryland Supreme Court again affirmed both the economic justifications (i.e., beneficial consequences) for a "no prepayments" rule—which include securing investment income for the lender, as well as protection against unwanted transaction costs, predictability in return on investment, and stability provided by regular payments— and philosophical justifications—including

mutuality of barring prepayment where acceleration is likewise barred, and freedom of contract. *Id.*

Similarly, the Supreme Court of Appeals of West Virginia describes the "perfect tender in time" rule as the "majority rule" and "default rule," and finds it is justified as follows:

> Justification of the rule of perfect tender in time has been expressed in both economic and philosophic terms. Conferring the right of prepayment when such right is absent from the note or mortgage instrument may cause economic hardships upon the lender, "not the least of which include the loss of the bargained-for-rate of return, an increased tax burden, unanticipated costs occasioned by the need to reinvest the principal, and for those creditors anxious to ensure regular payments not unlike an annuity, it undoes the mortgagee's purpose in making the loan." * * *
>
> The rule of perfect tender in time has further been rationalized philosophically, viewing the rights of creditor and debtor as equal and reciprocal:
>
> "'A creditor can no more be compelled to accept payments on a contract before, by the terms thereof, they are due, than can a debtor be compelled to make such payments before they are due. The time of payment fixed by the terms of a pecuniary obligation is a material provision, and each party has the right to stand on the letter of the agreement and perform accordingly.'"

*Kruse v. Planer*, 288 N.W.2d 12, 14 (Minn. 1979) (citing *Peryer v. Pennock*, 95 Vt. 313, 115 A. 105 (1921)).

*Young v. Sodaro*, 193 W.Va. 304, 456 S.E.2d 31, 34–35 (1995) (some citations omitted). The West Virginia found the rationale of this rule compelling. *Id.* 456 S.E.2d at 35; *accord Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 876 P.2d 1362 (1994) (finding similar justification for the rule in light of consequences of permitting prepayment when not bargained for). *See also Brannon v. McGowan*, 683 So.2d 994, 996 (Ala.1996) (observing that to change the common-law rule would impair obligations of a contract, contrary to constitutional prohibitions, and

the "perfect tender in time" rule did not constitute any restraint on alienation of property).

Similarly, this court's reading of Iowa Code § 535.9, that the statute provides only conditions on prepayment where a right to prepayment is otherwise established, furthers the balance the language of the statute itself reflects: The statute prohibits penalties and charges on prepayment, to the borrower's benefit, but establishes the *lender's* right to thirty-days notice of an intent to prepay the loan, Iowa Code § 535.9(2). What the statute does not do, in this court's reading, is unbalance the relationship by giving a borrower a unilateral right to escape from the burdens of the bargain. *Cf. Promenade Towers Mut. Hous. Corp.*, 597 A.2d at 1385 (identifying mutuality of obligations as a justification for the "perfect tender in time" rule); *Young*, 456 S.E.2d at 34–35 (same).

The consequences of this court's reading of Iowa Code § 535.9, which is that the statute neither prohibits "no prepayment" clauses nor creates a right to prepay, are simply in accord with the consequences of the majority common-law rule. In short, the court's reading requires the parties to adhere to the terms of their bargain, whereas the reading the Powers Partnership advocates would impose undue and unbargained-for hardships upon a lender. Therefore, the consequences of the court's interpretation of the statute do not justify some different reading.

To put it another way, there simply are no untoward consequences of the court's interpretation rendering it absurd, or demonstrating that the court's reading defeats the purpose of the statute. *See Burton*, 566 N.W.2d at 189; *Miller*, 546 N.W.2d at 602. To the contrary, the court's reading is in accord with the ordinary meaning of the language used and the context in which the statute was enacted, which demonstrates that it is in accord with the legislature's intent.

### D. Declaration Of The Rights Of The Parties

As a consequence of its interpretation of the Note and the effect upon it of Iowa Code § 535.9, the court may now "declare the rights and other legal relations of [the] interested part[ies]" to this declaratory judgment action with regard to prepayment of the

Note. *See* 28 U.S.C. § 2201. The Note expressly and unambiguously prohibits prepayment and there is no common-law or statutory impediment making the "no prepayment" clause in the Note unenforceable. Consequently, Prudential may properly refuse to accept prepayment of the Note and the Powers Partnership is obliged to make repayment according to the repayment terms of the Note. Prudential is entitled to summary judgment incorporating such a declaration of rights, and the Powers Partnership's cross-motion for partial summary judgment on the declaratory judgment claim must be denied.

Furthermore, the court's construction of the Note and the statute upon which the Powers Partnership relies demonstrates that the Powers Partnership's breach-of-contract counterclaim is untenable. Prudential has not violated the terms of the Note as modified by Iowa Code § 535.9 by refusing to accept prepayment, because there has been no statutory modification of the terms of the note. Prudential was merely exercising a contractual right to refuse prepayment of the Note. Prudential is therefore entitled to summary judgment on the Powers Partnership's counterclaim as well.

### V. CONCLUSION

This court's prognostications concerning the meanings the Iowa Supreme Court would ascribe to both the contract and the statute in question are now completed. Having examined the most reliable omens known to the court, plain meaning and reasoned construction guided by precedent, the court concludes, first, that the contract expressly prohibits prepayment of the loan. The court is of the view that the contract is not rendered ambiguous by Iowa Code § 535.9, because the statutory terms are incorporated into the contract; rather, the question is whether the statute renders the "no prepayments" clause unenforceable.

Because the parties agree that the common-law rule in Iowa is the "perfect tender in time rule," which comports with the contractual "no prepayments" clause, only if Iowa Code § 535.9 renders the "no prepayments" clause unenforceable can the Powers Partnership prepay the Note. However, the

court concludes that the statute has no such effect. Looking at the plain meaning of the statute, the court concludes that a "penalty" or "charge" is an *additional* cost beyond the normal terms of repayment in the event the borrower prepays a debt, but there is no such "penalty" or "charge" when a borrower is simply required to adhere to the terms of the original bargain and make payments according to the terms of the contract.

Further aids to interpretation confirm this reading of the statute. Another statute enacted at the same time as Iowa Code § 535.9 did indeed establish a right to prepay loans of the kind in question here, but that statute has now lapsed. Because the other statute created such a right, Iowa Code § 535.9 only established the conditions under which that right could be exercised, and still does establish the conditions under which other rights of prepayment may be exercised. However, Iowa Code § 535.9 did not create a right to prepay loans, or the companion statute was superfluous when enacted. Furthermore, when the legislature intended to establish and retain a right to prepay certain kinds of loans, it did so explicitly. Finally, because the consequences of this court's reading are essentially the same as the consequences of the common-law "perfect tender in time" rule embraced by the majority of jurisdictions, including Iowa, those consequences do not justify a different reading of Iowa Code § 535.9.

Thus, Iowa Code § 535.9 does not afford the Powers Partnership a statutory right to prepay the Note rendering the "no prepayments" clause in the Note unenforceable. The court therefore grants Prudential's motion for summary judgment in its entirety and denies the Powers Partnership's cross-motion for partial summary judgment.

More specifically, the court declares the rights of the parties under the Note and Mortgage executed by the Powers Partnership on August 17, 1992, with regard to prepayment of the Note, to be as follows: The Note expressly and unambiguously prohibits prepayment and there is no common-law or statutory impediment making the "no prepayment" clause in the Note unenforceable. Consequently, Prudential may properly refuse to accept prepayment of the Note and the Powers Partnership is obliged to make repayment according to the repayment terms of the Note.

Judgment in favor of Prudential shall be granted on its declaratory judgment claim and against the Powers Partnership on its counterclaim in accordance with the terms of this order.

**IT IS SO ORDERED.**