**June C. ALES, Plaintiff–Appellee,**

v.

**Gerald E. MERRITT, Beatrice M. Merritt and Richard McNamara, Defendants–Appellants.**

**107, INC., d/b/a Mel Foster Company, Plaintiff,**

v.

**June C. ALES, Defendant.**

**No. 91–259.**

Court of Appeals of Iowa.

April 28, 1992.

Stephen W. Newport of Newport & Newport, Davenport, for defendants-appellants Merritts.

Mark R. Engelmann of Wells, McNally & Bowman, Davenport, for defendant-appellant McNamara.

Jack E. Dusthimer of Carlin, Hellstrom & Bittner, Davenport, for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

June Ales owned property in LeClaire, Iowa. She decided to sell the property and listed it with 107, Inc., doing business as Mel Foster Company. Her real estate agent was Earl Busch.

Eventually, Richard McNamara, another employee of Mel Foster, showed the property to Gerald and Beatrice Merritt. The Merritts decided to make an offer on the property. McNamara helped the Merritts fill out a preprinted offer form supplied by Mel Foster. The offer was for a sale subject to financing. The offer also required the seller to pay for an inspection of the sewer and well. In addition, the offer provided:

> Seller warrants that the heating and air conditioning systems, plumbing and electrical systems, all appliances, and all other mechanical equipment included as part of the purchase price, will be in working order as of the date of possession, with the following exceptions:

McNamara wrote in "No exceptions."

Ales made a counteroffer for an increased amount. The Merritts accepted this amount. Ales then agreed to the offer as written, except for the adjustment in price. She signed the offer form, and it became the purchase agreement between the parties. Closing and possession were scheduled for November 1, 1989.

On September 27, 1989, the property was inspected. The property had its own septic tank. The inspection revealed there was no disposal field, which meant sewage was leaving the septic tank untreated and flowing directly into the Mississippi River.

This condition violated the state and local health codes. Because of this problem the Merritts would not be able to secure financing. On October 31, 1989, the parties entered into an agreement extending the closing to November 21.

The parties disagreed about who should pay for the septic system repairs. The Merritts argued the purchase agreement provided Ales warranted the plumbing system would be in working order and this should include the sewer system. McNamara expressed an opinion siding with the Merritts. Each side contacted counsel. As a result, the parties entered into an escrow agreement where each party would pay $5,000 to the lender who would then pay for the septic system repairs.

The closing was held on November 10, 1989. Busch was paid his portion of the commission for being the listing agent. Ales refused to pay a commission to McNamara. McNamara's commission would be $3,003.

In February 1990 Ales filed a petition for declaratory judgment seeking to require the Merritts to pay for the sewage system repairs. She also sought indemnification or contribution from McNamara. Mel Foster filed a petition on behalf of its employee, McNamara, for payment of his portion of the sales commission. These actions were consolidated in district court.

The district court found the sewage or septic system was not part of the plumbing system and so was not warranted to be in working order by Ales. The court went on to find the entire system should be considered to be in working order because it was functioning, although it did not meet code requirements. Ales was granted a judgment against the Merritts for the amount of her $5,000 deposit which was used to build the new septic system.

The district court found McNamara had a duty to inform Ales, before the purchase agreement was signed, of the problems which could arise from the inspection of the sewage system. The court then granted Ales a judgment against McNamara for $3,003, which was offset against her liability for the same amount of real estate commissions. The court in effect denied McNamara his commission in order to assist Ales with the costs of this suit, which the court found were unnecessarily caused by McNamara's failure to properly advise her.

The Merritts filed an appeal. McNamara also filed an appeal.

■■■ I. This action was filed at law; our review is for the correction of errors at law. Iowa R.App.P. 4. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. *Moore's Builder & Contractor, Inc. v. Hoffman,* 409 N.W.2d 191, 194 (Iowa App.1987). The reviewing court is not bound by the trial court's determination of the law. *Id.*

II. We first address the Merritts' appeal. They contend Ales, under the terms of the purchase agreement, warranted the plumbing system would be in working order. The Merritts believe the sewage or septic system should be considered part of the plumbing system. They also claim Ales's plumbing system was not in working order because it did not meet the requirements of the Uniform Plumbing Code, which has been adopted by the City of LeClaire and the State of Iowa.

■■■ When construing a written contract, we are guided by the rule the intent of the parties controls and, except in cases of ambiguity, intent is determined by what the contract itself says. *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg,* 461 N.W.2d 598, 600 (Iowa 1990). We will not resort to rules of construction where the intent of the parties is expressed in clear and unambiguous language. *Pathology Consultants v. Gratton,* 343 N.W.2d 428, 434 (Iowa 1984). We may ascertain the meaning and legal effect of a contract by giving the language its common and ordinary meaning. *Pappas v. Bever,* 219 N.W.2d 720, 721 (Iowa 1974).

■■■ We therefore give the term "plumbing system" its common and ordinary meaning. "Plumbing" may be defined as the pipes, fixtures, and other apparatus

concerned in the introduction, distribution, and disposal of water in a building. *Webster's Third New International Dictionary* (1971). We have also defined "plumbing" as work in and about water supply, drainage, and sewerage systems. *State ex rel. City of Sioux City v. Harrington*, 229 Iowa 1092, 1095, 296 N.W. 221, 223 (1941).

Under the Uniform Plumbing Code, "plumbing system":

> means and includes all potable water supply and distribution pipes, all plumbing fixtures and traps, all drainage and vent pipe and all building drains, including their respective joints and connections, devices, receptacles and appurtenances within the property lines of the premises and shall include potable water piping, potable water treating or using equipment, fuel gas piping, water heaters and vents for the same.

"Plumbing system" includes drainage pipes, which are defined by the Uniform Plumbing Code as pipes which convey sewage or other liquid wastes to a legal point of disposal.

We conclude the common and ordinary meaning of "plumbing system" includes a sewage or septic system. Therefore, under the terms of the purchase agreement, Ales warranted the septic system would be in working order.

■ We next address the question of whether the plumbing system, which did not meet code standards, could be considered to be in working order. We conclude the plumbing system was not in working order. The Scott County Health Department required the system to be reconstructed to provide proper sewage treatment and disposal. The system which was in place did not properly treat or dispose of sewage and thus could not be said to be in working order.

We reverse the district court's judgment for Ales on this issue. We remand to the district court with directions to enter judgment for the Merritts for the amount of their $5,000 escrow deposit which was disbursed by the contractor to improve the

septic system. The remainder of their deposit should be returned to them.

■ III. We now consider McNamara's appeal of the judgment entered against him. He claims the district court erred by imposing a duty upon him to inform Ales an inspection of her sewage system could reveal problems. He points out the purchase agreement specifically provides the broker and the broker's associates are not required to discover hidden defects in the property or to give advice on matters outside the scope of their real estate licenses. McNamara also claims the judgment against him allows Ales to be reimbursed for costs which were never charged to her.

The issues in *Clinton Land Co. v. M/S Assocs., Inc.*, 340 N.W.2d 232 (Iowa 1983), are somewhat similar to those in the present case. The seller brought an action for damages against a real estate agency claiming the agency's breach of fiduciary duty and fraudulent misrepresentation had caused litigation with the purchasers. *Id.* at 233. The agency counterclaimed for their commission on the sale. *Id.* The seller there was required to show the litigation was caused solely by the agency's conduct and the seller was not in any way at fault for causing the litigation. *Id.* at 236.

We find no evidence to show McNamara's conduct caused the litigation between Ales and the Merritts. Also, the evidence does not support a finding Ales was completely without fault for causing the litigation. Litigation could have been avoided if Ales had refused to proceed with the purchase agreement. However, Ales expressly agreed to extend the purchase agreement past its expiration date, even though at that time she knew there was a disagreement about who should pay for the septic system.

We reverse the judgment for Ales against McNamara.

IV. As we read the district court ruling, Ales was not relieved of her responsibility to pay a commission to McNamara, but was awarded a judgment for the same amount against him, and the two amounts would be offset against each other. Our reversal of

the judgment against McNamara leaves Ales's responsibility for McNamara's commission in place. We remand to the district court to order Ales to pay the amount of $3,003 to Mel Foster for McNamara's commission.

Costs of this action are assessed to Ales.

REVERSED AND REMANDED.