FARMERS & MERCHANTS SAVINGS
BANK, Manchester, Iowa, Appellee,

v.

VANDENBERG CHEVROLET–
BUICK, LTD., Appellant.

VANDENBERG CHEVROLET–
BUICK, LTD., Appellant,

v.

FEDERATED MUTUAL INSURANCE
COMPANY, Appellee.

No. 93–677.

Supreme Court of Iowa.

July 27, 1994.

Robert J. Murphy, Independence, for appellant.

H. Raymond Terpstra, II, Terpstra, Terpstra & Epping, Cedar Rapids, for appellee Farmers & Merchants Sav. Bank.

John W. Holmes, Holmes & Holmes, Waterloo, for appellee Federated Mut. Ins. Co.

Considered by McGIVERN, C.J., and CARTER, LARSON, SNELL, and TERNUS, JJ.

CARTER, Justice.

Vandenberg Chevrolet–Buick, Ltd., an automobile dealership (the auto dealership), appeals from an adverse judgment based on an alleged breach of warranty in the sale of customers' deferred payment obligations to Farmers & Merchants Savings Bank (the bank). The auto dealership also appeals from the denial of its third-party claim for indemnity against Federated Mutual Insurance Company (Federated Mutual). After reviewing the record and considering the arguments of the parties, we affirm the judgment of the district court.

The dispute between the bank and the auto dealership concerns the bona fides of a certain note and security agreement that the dealership sold to the bank on February 26, 1988. These documents, dated February 25, 1988, bore the signatures of Tom J. Manning and Betty J. Coyle as comakers of a note given in payment for a 1987 Buick automobile.

It appears without dispute that Betty J. Coyle did not sign either the promissory note or security agreement in favor of the auto dealership. Her name was placed on those documents by Tom J. Manning. This fact was not known to the bank when it purchased the note, although it appears that it was known to several employees of the auto dealership.

The bank first learned of the infirmity in Coyle's signature on February 14, 1989, when it contacted her concerning delinquent payments on the note. When this default was not cured, the bank repossessed and sold the Buick automobile and then sued Manning and Coyle for the deficiency on the note. A default judgment was initially entered against both Manning and Coyle on that claim. On Coyle's application, the judgment against her was set aside, and the claim against her was dismissed by the bank based on her assertion that she had not signed the note.

In December 1991, the bank commenced this action against the dealership. It alleged that, because Coyle's signature on the note was not genuine, the dealership had breached its written agreement that all deferred payment obligations assigned by it to the bank would not be "subject to any disputes, setoffs, or counterclaims." That assurance was contained in a written Master Dealer Agreement executed between the dealership and the bank on November 1987. The bank claimed damages for the unpaid balance of the Manning–Coyle note. In June 1992, the dealership filed a third-party claim against Federated Mutual, alleging that any loss it might sustain as a result of the Coyle note transaction must be indemnified by Federated Mutual under a "Garage Coverage" policy issued by that insurer.

In a trial of the matter to the district court, the dealership presented evidence that Manning's act in forging Coyle's name on the note and contract was made known to her shortly after it occurred, that she had shared the use of the automobile with Manning, and that she made some of the payments on the note from her own funds. These actions, the dealership urged, were a full ratification of Manning's actions in placing her name on the contract documents. Coyle did not dispute her knowledge of the forgery shortly after it occurred. She testified, however, that Manning's actions were taken without her consent and against her wishes. She confirmed that she had been allowed to use the automobile during the time that she was Manning's girlfriend but denied that she had ever assumed any obligation to pay for the car.

The trial court found that Manning's act of signing Coyle's name on the note was contrary to her wishes. The court further found that Coyle's conduct after learning of Manning's actions did not evidence an acceptance of personal liability on the forged note. In addition, the court concluded that the note was also unenforceable against Coyle because she had not received the notice of terms mandated by the Iowa Consumer Credit Code.[1] On the third-party claim the

---

1. This notice-of-terms requirement provides:
 No natural person, other than the spouse of the consumer, is obligated as a cosigner ... with respect to a consumer credit transaction unless before or contemporaneously with signing any separate agreement of obligation or any writing setting forth the terms of the debtor's agreement, the person receives a separate

court found that Federated Mutual's Garage Coverage did not require indemnification of the dealership as a result of the disputed transaction.

## I. *The Breach-of-Warranty Issue.*

The auto dealership seeks reversal of the judgment on the basis that the district court erred in (1) not concluding that Coyle had ratified Manning's actions, and (2) finding noncompliance with Consumer Credit Code notice requirements. We need not determine the validity of those contentions. Under the terms of the Master Dealer Agreement, the dealership warranted that the deferred payment obligations in question would be free from "dispute" as to their genuineness.

 In the absence of special circumstances, not apparent here, words in an agreement are to be interpreted in accordance with their generally accepted meaning. *Pappas v. Bever,* 219 N.W.2d 720, 721 (Iowa 1974); *Ales v. Merritt,* 486 N.W.2d 592, 594 (Iowa App.1992). We believe that language warranting against a "dispute" over the genuineness of the assigned deferred payment obligations is more than an assurance that the assigned notes could ultimately be legally enforced. It constitutes an assurance that there would be an absence of challenge to the genuineness of the assigned documents.

In the present case, the evidence indicates that there was indeed a claim disputing genuineness, that a factual basis was advanced in support of that claim, and that a challenge to enforcement of the note was lodged as a result thereof. Those facts are sufficient to trigger the dealership's warranty against disputes. It was not necessary for the bank to also establish that Coyle could ultimately have prevailed on the legal issues surrounding her claim, although the district court concluded that she could have.

written notice that contains a completed identification of the debt the person may have to

## II. *The Damages Issue.*

 The auto dealership argues that, even if a breach of warranty was shown as to the deferred payment obligation, the trial court's award of damages was flawed. It suggests that the impact of the note's unenforceability as to Coyle is softened by reason of its continuing enforceability as to Manning. At the most, the dealership urges, it should only be liable to indemnify the bank for a portion of the unpaid balance on the note.

If the Master Dealer Agreement simply established the warranties on which the bank's claim is predicated and was silent as to remedies for noncompliance, the dealership's argument might have merit. Absent a contractual provision fixing remedies for breach, the bank's option would be to either rescind the note-purchase transaction or to sue for expectancy damages. The bank is in no position to rescind its purchase of this deferred payment obligation because it has never made any effort to restore the status quo. If the bank were seeking to exact expectancy damages in this action, the dealership is correct that it would be required to prove both the collectibility of the note as to Coyle and the noncollectibility as to Manning. That is because the dealership only warranted the genuineness of the note, not its collectibility. All of this was unnecessary in the present case, however, because the Master Dealer Agreement does specify the remedy for a breach thereof.

The Master Dealer Agreement expressly provides that, "if [the dealership] breaches any provision of [the] agreement ... with respect to each particular note, we [the dealership] shall be liable to you [the bank] for the unpaid balance of any such note." Because, in the weighing of the competing interests, this stipulation does not appear to be unreasonable, it is legally enforceable. *See Engel v. Vernon,* 215 N.W.2d 506, 516–17 (Iowa 1974). We interpret the quoted language as establishing the bank's right to recover the unpaid balance of the note in the present case without any need to prove its

pay and reasonably informs the person of the person's obligation with respect to it.

ultimate collectibility.[2] The district court properly measured the damages awarded according to this stipulation.

### III. *The Dealership's Right to Indemnity From Federated Mutual.*

■ The final issue in the case is whether, as the dealership claims, Federated Mutual is required to indemnify it for this loss under the Garage Coverage Policy that it purchased from that insurer. The policy in question does provide certain coverages for sums the dealership becomes legally obligated to pay as damages under consumer credit protection legislation. We interpret this coverage to only extend to statutory penalties. As such, it does not embrace the type of loss that the dealership suffered on the present transaction.

■ The dealership urges that irrespective of the consumer credit law provisions of the policy it is entitled to be indemnified under that policy provision entitled "False Pretense Coverage." That coverage is provided by an endorsement, which provides that "we [the insurer] will pay for loss to a covered auto under False Pretense Coverage that results from someone causing you to voluntarily part with the covered auto by trick, scheme or under false pretenses." The dealership urges that the forgery of Coyle's signature on the deferred payment obligation was a false pretense that caused it to voluntarily part with the 1987 Buick automobile.

Assuming that the present transaction would give rise to indemnity under Federated Mutual's policy if the dealership had been deceived into parting with the automobile as a result of the forgery, we conclude that the present facts do not sustain coverage. The auto dealership was not deceived into parting with the automobile by reason of Manning's act in signing Coyle's name on the note and contract. This forgery took place in the presence of the representatives of the dealership who were completing the transaction. The district court properly denied the claim for indemnification under the policy.

We have considered all issues presented and find no basis for reversing the judgment of the district court.

**AFFIRMED.**

Iowa Code § 537.3208(1) (1987).

**2.** The Master Dealer Agreement also provides that the bank's right to seek redress from the maker of the assigned note and the dealership on the warranties are cumulative. The bank is only entitled to collect once, but it may simultaneously pursue Manning and the auto dealership for payment of the note. If the dealership satisfies the bank's judgment in the present action, it will then become subrogated to the bank's rights against Manning. *See Park v. Best,* 176 Iowa 7, 19, 157 N.W. 233, 237 (1916).