# IN THE COURT OF APPEALS OF IOWA

No. 20-1146
Filed October 6, 2021

**COOLEY PUMPING, LLC,**
    Plaintiff-Appellee,

**vs.**

**GREG MELCHER and LISA MELCHER,**
    Defendants-Appellants.

_____

Appeal from the Iowa District Court for Grundy County, David P. Odekirk, Judge.

Greg and Lisa Melcher appeal a district court order in favor of Cooley Pumping, LLC and dismissal of their counter claims. **AFFIRMED AND REMANDED.**

Bruce J. Toenjes of Nelson & Toenjes, Shell Rock, for appellants.

Mark W. Fransdal and Bradley M. Strouse of Redfern, Mason, Larsen and Moore, PLC, Cedar Falls, for appellee.

Heard by Mullins, P.J., and May and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Greg and Lisa Melcher appeal a district court order in favor of Cooley Pumping, LLC and dismissing their counterclaims related to the design and installation of their septic system. The Melchers raised several issues on appeal including arguments that the district court applied incorrect legal standards, newly discovered evidence should have led to a new trial, and the district court made multiple errors in awarding attorney fees and costs.

I.      **Background Facts and Proceedings**

Greg and Lisa Melcher are homeowners in a rural area of Grundy County. Cooley Pumping, LLC, is a company located in Grundy County that performs design and installation of septic systems in Grundy and other counties in Iowa. The Melchers contacted Cooley Pumping in 2017 to design and install a new septic system on their property. The Melchers' prior system was declared noncompliant by Grundy County. Cooley Pumping visited the Melchers' home to discuss the specifics of the system and its location on the property. Cooley Pumping's proposal for the system was accepted by the Melchers in March. Cooley Pumping submitted an application to the Grundy County Sanitarian, which was approved on April 11, the same day a site inspection was performed. The sanitarian approved installation for a 1250 gallon septic tank with two laterals totaling 180 feet. The Melchers have only ever used two of the three bedrooms located in the home, and the evidence shows there was some confusion over how many bedrooms the home actually has. Cooley Pumping relied on the sanitarian's loading calculation and knowledge of the soil type and characteristics to determine the size of the system and its components. The sanitarian relied on her prior experience with

neighboring properties and USDA soil surveys to aid her calculation and determination that a conventional system was appropriate.

At no time did the sanitarian or Iowa Department of Natural Resources (DNR) representatives who were consulted, neither of which had personal experience with the Melcher property, have any hesitation about installing a conventional system. No percolation test was performed on the property because it was not required by Grundy County. Although no six-foot test hole was dug on the Melchers' property, the hole dug for installation was adequate for Cooley Pumping to determine there would be no problem with the water table.

Cooley Pumping's owner, Paul Cooley, was on site the morning of the installation but was called away to another worksite. Cooley left another fully certified installer, B.H., on the property to oversee installation. The Melchers' property has a number of limiting characteristics including geothermal lines, a well, trees, gardens, a pond, a shed, and a slope in elevation. Cooley Pumping also contracted to pump out, disable, and backfill the old septic system. In order to accommodate limiting factors, B.H. made the decision to relocate the tank approximately ten feet from the location the parties planned for it. The Melchers were informed and made no objection. The sanitarian was unable to visit the day of installation so Cooley Pumping took photos of the site for approval. The system was backfilled the same day, and a final inspection was conducted on April 24.

The Melchers raised a number of complaints related to installation and deviations from the original plan drawn by the parties.[1] They insisted the lids were

---

[1] A few minor issues were addressed and corrected by Cooley Pumping that have not been a part of this litigation.

too high and a significant amount of dirt would need to be loaded on the property to make them level with the ground. In order to accommodate the cost of landscaping, the Melchers withheld the last $1000.00 of their payment to Cooley Pumping. The sanitarian and B.H. visited the Melcher property to address pending complaints, take measurements, and complete a soil probe. No issues with the system were found and no alterations were recommended.

The Melchers refused to complete the payment of the contract price. Cooley Pumping began a small-claims proceeding to recover the remaining payment and a finance charge. The Melchers made counterclaims, and the proceedings were removed to the district court. Over the course of litigation, the Melchers made two motions for summary judgment, which were denied. Multiple expert witnesses were consulted and testified at trial. Trial was held on September 18 through 20, 2019, and completed on October 9. Post-trial briefing was submitted and the record was closed in November. The district court's ruling was filed February 27, 2020, in favor of Cooley Pumping. At that same time, the Melchers became aware that the sanitarian and B.H. had engaged in an extramarital affair at some point. The Melchers filed motions for new trial and to reconsider, alleging the district court made a number of errors and that the affair was newly discovered evidence. Cooley Pumping also pursued its right to recover attorney fees and costs. Extensive litigation began again. A hearing on the post-trial motions and fees was held on June 24. The district court entered its order on August 31, again in favor of Cooley Pumping. The Melchers appeal. Following the notice of appeal, Cooley Pumping filed a supplemental request for attorney fees, which was granted. The Melchers appeal the supplemental award.

## II.    Standards of Review

Claims centered on the contract between the parties and alleged breach are reviewed for correction of errors at law. *Meincke v. Nw. Bank & Trust Co.*, 756 N.W.2d 223, 227 (Iowa 2008). "We view the evidence in the light most favorable to the judgment" and examine whether the district court's fact findings are supported by substantial evidence. *Id.* "Evidence is substantial when reasonable minds accept the evidence as adequate to reach a conclusion." *Id.* We ask whether the evidence "supports the finding actually made, not whether the evidence would support a different finding." *Id.* (quoting *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004)).

Rulings on motions for new trial based on newly discovered evidence are reviewed for abuse of discretion. *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995). We ask if the district court clearly abused its discretion "on untenable grounds or acted unreasonably." *Id.* "We likewise review for abuse of discretion rulings allowing or disallowing expert testimony challenged as untimely and 'accord the trial court broad discretion.'" *Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014) (quoting *Klein v. Chi. Cent. & Pac. R.R.*, 596 N.W.2d 58, 60–61 (Iowa 1999)), *overruled on other grounds by Alcala v. Mariott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). "We review a district court's denial of a new trial for failure to administer substantial justice for abuse of discretion." *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015).

Attorney fee disputes that require courts to engage in statutory interpretation are reviewed for correction of errors at law. *Van Sloun v. Agans Brothers, Inc.*, 778 N.W.2d 174, 182 (Iowa 2010). In the absence of a statutory-

interpretation issue, review of an attorney-fee award is for an abuse of discretion. *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 732 (Iowa 2005).

**III.    Discussion**

A.      Contractual Claims

The Melchers argue the district court erred in applying the wrong legal standard to their breach claim, using that allegedly improper standard as a bar to their counterclaims, and that the analysis was flawed.

*1.      Standard of Compliance*

The parties agree that the standard of review for these contractual claims is for correction of errors at law but disagree about the necessary level of compliance required to meet that standard.  The Melchers argue that strict compliance with the applicable administrative code is necessary.  Cooley Pumping argues that substantial compliance is the correct standard.

The DNR controls water pollution within the state, including private sewage disposal systems.  Iowa Code § 455B.172(1), (2) (2018).  The DNR regulations for private sewage disposal systems are contained in 567 Iowa Administrative Code Chapter 69.  County health boards are tasked with adopting the minimum standards set forth by the DNR but may adopt more stringent standards provided that they are consistent with the minimum standards set forth in the administrative code.  Iowa Code § 455B.172(3), (4).

The Melchers argue the district court applied the standard of substantial performance in error, pointing toward its citation to cases involving mechanics liens.  Although Cooley Pumping did not bring their claim through a mechanic's

lien, our supreme court has said that "[t]he concept of substantial performance in the mechanic's lien context is derived from contract law." *Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 546 (Iowa 2012). And, in applying the standard of substantial performance to a mechanic's-lien issue, our supreme court also borrowed its definition from contract law. *Id.* "In the area of contracts, '[s]ubstantial performance is performance without a material breach, and a material breach results in performance that is not substantial.'" *Id.* (quoting II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.16, at 518 (3d ed. 2004)). "[T]he burden of proof regarding the performance of the contract rest[s] on the plaintiff. Although the burden of proof regarding the showing of substantial compliance rests with the plaintiff-contractor, the defendant-homeowner has the burden of showing any defects or incompletions." *Moore's Builder & Contractor, Inc. v. Hoffman*, 409 N.W.2d 191, 194 (Iowa Ct. App. 1987) (citations omitted).

The Melchers cite to *Ales v. Merritt*, a breach-of-contract case also dealing with a sewage issue, in which the seller of a home warranted the plumbing system was in working order. 486 N.W.2d 592, 593, 595 (Iowa Ct. App. 1992). In *Ales*, the court noted that the system did not comply with the applicable plumbing standards. *Id.* at 595. Another issue entwined with the applicable standard was whether the septic system actually worked. *Id.* Ultimately, the court found the system "did not properly treat or dispose of sewage thus could not be said to be in working order." *Id.* The court's conclusion rested on the fact that the system in place failed to "properly treat and dispose of sewage," meaning it didn't perform its essential function and was not in the condition warranted by the contract. *Id.* That analysis is supported by a recent pronouncement of our supreme court that

"substantial performance 'excuses contractual deviations or deficiencies which do not severely impair the purpose underlying a contractual provision.'" *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 701 (Iowa 2020) (quoting *SGD Macerich Props. L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002)).

We find no error in applying the substantial performance standard because our supreme court has noted its applicability on both contract and mechanic's-lien issues.

### 2. Melchers' Counterclaims

The Melchers argue the district court erred in finding that Cooley Pumping's substantial performance was a bar to their counterclaims. Substantial performance is a defense, not a bar, to warranty claims. *Moore's Builder & Contractor, Inc.*, 409 N.W.2d at 195. If the district court declined to consider the counterclaims merely because Cooley Pumping substantially performed on the contract, we would be forced to reverse and remand. *Id.* But, that is not what happened. In its February 2020 order, the district court specifically found no material deviations from the contract terms existed.

> The Melchers have failed to prove a material breach of contract by Cooley Pumping. The Melchers received the working septic system that they have only partially paid for.
> . . . .
> While there are technical deviations from the terms of the Chapter 69 regulations, none are material unless and until there is some impact on the functionality of the system or impact on the health of the owner or public.

The district court also found the Melchers failed to prove "that the septic system has or will fail" or that it created unsanitary conditions on the property, and ultimately that the Melchers suffered only speculative damages.

Following the Melchers' motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2), the district court said again that the Melchers failed to prove the system was not fit for its intended use or that the work was performed in any way less than a workmanlike manner. From the record, it is clear that the district court did consider the counterclaims, including warranty issues. Because the district court did not bar the counterclaims, but instead considered substantial performance as a defense, we find no error.

### 3. Contract Analysis

The Melchers argue the district court's analysis is incorrect because Cooley Pumping breached the contract in that it did not comply with chapter 69, no showing of current harm was required, the Grundy County Sanitarian had no discretion to excuse the breach, Cooley Pumping failed to substantially perform, the warranty was breached, and hearsay evidence was given too much weight.[2]

Cooley Pumping does not dispute the applicability of the local ordinances or chapter 69. It argues, instead, that it substantially complied with the applicable ordinances and regulations, and rendered complete performance. The Melchers cite four ways the septic system violates the applicable regulations: (1) the system is undersized, (2) the laterals are not level, (3) the laterals are not equal in length, and (4) there is insufficient treatment soil under the laterals.

We have already established that the district court did not err in applying the substantial-performance framework and will apply it here. "[A] technical, exact

---

[2] The Melchers argued the district court relied too heavily on hearsay statements of former DNR employee Dan Olson. They failed to cite to any authority to support their argument. We deem the argument waived. Iowa R. App. P. 6.903(2)(g)(3).

and perfect performance is not necessary. Substantial performance is all that is required. Where there is substantial performance the builder is entitled to the contract price less reasonable damages on account of slight defects in performance." *Huffman v. Hill*, 65 N.W.2d 205, 206 (Iowa 1954). Cooley Pumping bears the burden to prove it substantially performed to be entitled to full payment. *Farrington v. Freeman*, 99 N.W.2d 388, 391 (Iowa 1959). Defects in performance may result in a deduction. *Id.*

> "Substantial performance," as defined by the cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price.

*Id.* (quoting *Littell v. Webster Cnty.*, 131 N.W. 691, 694 (Iowa 1911)). "Once a contractor has met its burden to show substantial performance, the homeowner has the burden to show any defects or incompletions which may be deducted from the contract price." *Nepstad Custom Homes v. Krull*, 527 N.W.2d 402, 406 (Iowa Ct. App. 1994).

The district court provided the following discussion and found Cooley Pumping substantially complied with the contract:

> Cooley Pumping installed a system for the Melchers which was permitted and approved by the Sanitarian for its size, location, and design. The work was done pursuant to a contract. All of the features described in the contract were installed, and the system has performed as intended and expected [since installation]. There had been no failures, backups, or surface water linked to the septic system. Six thousand dollars of the modest $7000 cost of this system was paid, but $1000 was withheld because the Melchers claimed 30 tons of dirt was needed in the back yard to bring the lids "flush to the ground," in spite of the fact that the contract said Cooley Pumping would complete the area only to "ROUGH GRADE."

> . . . . The location of the tank was raised as an issue because Melchers claimed that the contract provided for its placement directly north of the apple tree and on top of a geothermal line. That is not consistent with the recommendations of Dan Olson at the DNR. The Melchers also claim that the tank was set too high, but they have done nothing to finish the grading and landscaping around the tank, and the tank has never experienced any freezing. The Melchers have no out-of-pocket expenses to claim as damages because nothing has been done to fix the alleged defect. The septic system has at all times worked as it was intended.
>
> The Sanitarian was aware at some time prior to her final inspection that the location of the tank was moved 10 feet or less from its original planned location to make it a more optimal location. She did not find this to be a significant change in the design. There is no evidence that this change was material or caused any problems.

We disagree with the district court to the extent that the contract specified the Melchers would receive four risers.[3] Four were initially installed, but two were removed to bring the lids closer to the ground.

The district court found the deviations from chapter 69 were "technical," and were not "material unless and until there [was] some impact on the functionality of the system or impact on the health of the owner or public." The alleged defects of the system are only, in fact, defects if we find strict compliance with chapter 69 is the applicable standard. But the language contained in chapter 69 concedes that perfect compliance is unnecessary. The DNR grants regulative power to the counties. Iowa Code § 455B.172(4). Both the DNR and administrative authorities, including local health boards, may grant variances from the regulations when necessary. Iowa Admin. Code rs. 567-69.1(2), .22. Grundy County defines the

---

[3] Risers are concrete cylinders set over the opening of the tank to elevate the lids. The contract specified that two risers would be stacked on each opening, for a total of four risers.

administrative authority to include the County Sanitarian. Grundy Cnty., Iowa Ordinances 7.02.02(6) (2004).

The evidence presented at trial shows there were minor deviations from the original plans developed, but that nothing has hindered the performance of the system. Even though the Melchers point to minor changes, in all other respects, they received the septic system they contracted to receive. The evidence also reveals that any deviations from the original plan were approved by the Grundy County Sanitarian, who had the discretion to grant variances. Iowa Admin. Code rs. 567-69.1(2), .22. On our review of the record, substantial evidence was presented to support the district court's finding that Cooley Pumping substantially performed on the contract and is not in breach. *Homeland Energy Sols., LLC*, 938 N.W.2d at 701. Furthermore, we agree with the district court that Cooley Pumping performed its obligations "in a substantially workmanlike manner and the septic system is fit for its intended use." The Melchers' warranty claims thus fail.

The Melchers take issue with the district court's requirement of present harm for an award of damages and argue they should be allowed to recover for future damages. The Melchers ask that damages be awarded based on substantial evidence of the probability that the lifespan of the system will be shorter than it should be. "Under Iowa law, when a contract has been breached the nonbreaching party is generally entitled to be placed in as good a position as he or she would have occupied had the contract been performed." *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 831 (Iowa 1998). "Under this theory of damages, the nonbreaching party's recovery 'is limited to the loss he has *actually suffered by reason of the breach*; he is not entitled to be placed in a better

position than he would have been in if the contract had not been broken.'" *Id.* (emphasis added) (quoting 22 Am. Jur .2d *Damages* § 45 (1988)). Applying this legal framework, the Melchers have suffered no damages. They have not proved that the system has failed or malfunctioned in any way. They have not completed the landscaping they claim is required to restore their property. While the system's ultimate failure is, or may be, foreseeable at some future point, we have no way to predict if, when, or to what extent that may occur. It is possible that they system may have a traditional life expectancy. Like the district court, we find the damages requested are speculative and there are no damages to award at this time.

B. Evidentiary Claims

The Melchers argue the district court erred in failing to grant a new trial based on newly discovered evidence, the verdict failed to do substantial justice, and the late designation of an expert witness should not have been allowed.

*1. Newly Discovered Evidence*

The Melchers argue that the existence of an extramarital relationship between the Grundy County Sanitarian and B.H., the Cooley Pumping employee who led the installation of the Melcher's system, created bias between the two witnesses and materially affected the Melchers' substantial rights. During oral arguments on the Melchers' post-trial motions, B.H. testified that the affair occurred in January 2020. The sanitarian also testified, but reported that the affair occurred in late January 2020 and lasted into early February. Both testified that the affair did not exist prior to 2020 and was over in February of that year. The Melchers became aware of the relationship on February 24, 2020, and confirmed it with family members of the sanitarian and B.H. on February 27. The Melchers then

filed their motion for new trial, arguing that the relationship between B.H. and the sanitarian created bias, that the witnesses coordinated their testimony, and that they had engaged in spoliation.

Cooley Pumping contests error preservation on the spoliation argument. The hearing transcript reveals that the witnesses were questioned about the fact that they deleted text messages that would have exposed the affair to their spouses even though they were subject to a litigation hold requiring them to retain records. The trial transcript reveals that the Melchers did raise spoliation in oral arguments, but the district court rested its decision solely on whether the relationship itself was newly discovered evidence. "It is a fundamental doctrine of appellate review that issues must be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The only comment the district court made regarding the phone records were that they were "consistent with the testimony of [the sanitarian and B.H.] concerning the timeframe of their relationship." Although we do assume "that the district court rejected claims not specifically addressed" in an order, that assumption is "only to guide our review of an incomplete or sparse record when preservation of error is not at issue." *Id.* at 539–40. In this case, it does not appear that the district court made any finding related to spoliation and only considered whether the relationship at issue met the standard to grant a new trial. Because the district court did not rule on the spoliation issue, it is not preserved for our review. *Id.* at 537.

The Melcher's moved for a new trial pursuant to Iowa Rule of Civil Procedure 1.1004(7), which allows a party to move for a new trial upon the

discovery of "[m]aterial evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at the trial."

> A party seeking a new trial on such grounds must demonstrate three things: (1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted.

*Benson*, 537 N.W.2d at 762. When considering the first element of the *Benson* test, the evidence must have both (1) "existed at the time of trial" and (2) "for excusable reasons, the party was unable to produce at the time." *Id.* at 762–63. Trial was held in September and October of 2019, and all of the evidence in the record points to the affair taking place in January and February of 2020. Thus, no evidence of any affair existed because it had not yet taken place. *Id.* In order to qualify as newly discovered evidence that would lead to a new trial, it must have existed at the time of the trial. *Id.* We agree with the district court's decision to deny the motion for new trial.

### 2. Expert Witness Designation

The Melchers argue the district court erred in denying the motion to strike an allegedly late-designated expert witness, Tim Rozendaal.

Courts are granted broad discretion to consider motions to strike expert witnesses challenged as untimely. *Hagenow*, 842 N.W.2d at 670. Iowa Rule of Civil Procedure 1.500(d) requires that disclosure of experts occur "(1) No later than 90 days before the date set for trial; or (2) Within 30 days after the other party's disclosures if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under rule 1.500(2)(b) or (c)."

Cooley Pumping informed the Melchers on July 11, 2019 that Tim Rozendaal would perform a time-of-transfer evaluation. They requested that the evaluation occur within three weeks so that the September trial could still occur. A hearing was held on July 31 to determine the parameters of the evaluation, who may be present, and whether interaction would be permitted. The evaluation occurred on August 1, and Rozendaal's report was provided to the Melchers on August 19. That information was then updated on August 28. Cooley Pumping did not file the designation of expert witness with the court until August 29.

The initial disclosure of Rozendaal was sixty-nine days before trial. The evaluation was forty-eight days before trial. The report was provided to the Melchers thirty days before trial and was then supplemented twenty-one days before trial. By the language of the rule, deadlines were missed. Iowa R. Civ. P. 1.500(d). However, the Melchers had approximately three weeks from the notification that Rozendaal would perform the evaluation until it occurred. The Melchers appeared for a hearing to be heard about the conduct of the parties on their property. It appears that the Melchers were present during the test. On our review of the record, no prejudice resulted from the late designation and the expert's admission was not an abuse of discretion. *See Hagenow*, 842 N.W.2d at 670.

### *3. Substantial Justice*

The Melchers argue that the district court erred in failing to grant a new trial. They allege that when the record is viewed as a whole, considering numerous legal errors and witness issues, the verdict does not do substantial justice between the parties.

"[A] trial court has inherent power to grant a new trial when a verdict fails to administer substantial justice." *Crow*, 871 N.W.2d at 108. If the district court makes a determination that substantial justice was not done, it may grant a new trial pursuant to Iowa Rule of Civil Procedure 1.1004 if "the reason the verdict fails to administer substantial justice [is] apparent in the record to justify" the new trial. *Id.* The Melchers point to legal errors, biased witnesses, a noncompliant system, and the lack of a remedy. However, our review has already established that the alleged legal errors, witness issues, and complaints regarding the system's compliance were correctly determined by the district court. The Melcher's received a functional system that substantially complies with the applicable regulations and contract provisions. We find no apparent justification for a new trial and no abuse of discretion. *Id.*

C.      Fees and Costs

The Melchers argue the district court erred in awarding attorney fees and costs of the litigation and that the district court lacked jurisdiction to award fees after the appeal was taken. Cooley Pumping requests an award of appellate attorney fees.

1.      *Attorney Fees and Costs*

The Melchers argue the district court erred in awarding attorney fees because their post-trial motions should have been granted and fees that were associated with a case involving Cooley Pumping's insurer were unrelated to the case at issue.

"When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court *shall* allow and tax as a part of the

costs a reasonable attorney fee to be determined by the court." Iowa Code § 625.22 (emphasis added). "Costs *shall* be recoverable by the successful against the losing party." *Id.* § 625.1 (emphasis added). The parties do not dispute the fact that the contract included an agreement that if litigation resulted from the contract, "the prevailing party in said legal action shall be entitled to recover its reasonable attorney's fees and costs of litigation related to said legal action." "The district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *GreatAmerica Leasing Corp.*, 691 N.W.2d at 733. The applicant bears the burden to prove "the services were reasonably necessary and that the charges were reasonable in amount." *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990). Courts may consider factors including "the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service." *Id.*

This case began with a $1000.00 dispute in small claims court for the unpaid balance on the Melchers' account with Cooley Pumping. The Melchers' counterclaims removed the case to the district court. We agree with the district court's rendition of the litigation following the change, "involv[ing] extensive discovery and pretrial litigation (including two motions for summary judgment), a lengthy trial and post-trial briefs." Litigation before the district court began in December 2017 and was not complete until December 2020. The parties appeared before the court for three hearings before the three and one-half day trial

and appeared again for post-trial motions. The district court's decision on attorney fees and costs involves all of the factors described in *Landals*. *Id.* We have already found the district court did not err in denying the Melchers' post-trial motions. Furthermore, we agree with the district court that any fees that may overlap with the Melchers' claim involving the insurer are "reasonable in light of the issues relevant to the defense of the claims in" this matter. We also agree with the district court that, "had the [Melchers] prevailed they would have likely submitted a similarly large request for attorney fees and costs relative to the amount of damages they were claiming." Finding nothing clearly unreasonable or untenable on our review of the record, we find no abuse of discretion. *GreatAmerica Leasing Corp.*, 691 N.W.2d at 732.

### 2. Jurisdiction Following Notice of Appeal

The Melchers argue that the notice of appeal, filed September 3, 2020, divested the district court of jurisdiction to consider attorney fees.

Although this issue relates to an attorney-fee award, because it calls jurisdiction into question, we review for correction of errors at law. *In re Marriage of Engler*, 532 N.W.2d 747, 748 (Iowa 1995). Generally, when one party files a notice of appeal, jurisdiction rests solely with the appellate court. *In re Estate of Tollefsrud*, 275 N.W.2d 412, 417 (Iowa 1979). But that rule is not without exception. "[A] trial court retains jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal." *Id.* at 418. Attorney fees may be considered "separate and distinct" from underlying matters that transfer jurisdiction on the filing of an appeal. *Landals*, 454 N.W.2d at 897.

In its February 27, 2020 order, the district court found Cooley Pumping should receive fees and costs following the filing of fee affidavits. Cooley Pumping then filed its motion for fees and costs, and litigation on that issue began. The record reveals that on June 24, prior to the hearing on post-trial motions, Cooley Pumping filed a supplemental affidavit, increasing the amount requested in fees. The initial request listed fees in the amount of $100,091.00 and costs in the amount of $4653.38. The supplemental request was for an additional $34,560.05 in fees. The district court ruled on the post-trial motions on August 31. The procedural history described in that ruling lists the original motion for fees and costs, but does not list the supplemental motion. In its analysis, the district court left out the supplemental request again. The Melchers filed a notice of appeal on September 3. On September 15, Cooley Pumping filed an application for the district court to rule on its supplemental request; the Melchers resisted. The district court's ruling on September 21 granted all but $213.30 of the supplemental request.

The district court reviewed the supplemental request through the factors presented in *Landals*, and awarded $34,346.75. 454 N.W.2d at 897. The fees were related to the Melchers' "post-judgment motions and resistances," which were equally contentious to trial. Although it would have been tidier for the district court to consider the supplemental request and rule on it with the other fees, the district court did not lack jurisdiction to rule on the supplemental award after the notice of appeal was filed. The August 31 order considered all of the fees incurred by Cooley Pumping through March 3, 2020. The supplemental request related to the ensuing post-trial litigation, which was extensive. Because the requests related to distinct phases of litigation, trial and post-trial, and the supplemental request

had no impact on the substantive issues of the August 31 ruling that was on appeal, we find the district court retained jurisdiction to rule on the collateral matter of supplemental attorney fees.

### 3. Appellate Attorney Fees

Cooley Pumping requests an award of appellate attorney fees. The Melchers resist, arguing only that Cooley Pumping should not prevail on appeal and should receive no fee award. "Although a party entitled to attorney fees under a contract may be entitled to reasonable attorney fees on appeal," appellate courts are best equipped to consider the request by examining an affidavit listing the fees requested. *Van Sloun*, 778 N.W.2d at 184. In the absence of an affidavit, we find Cooley Pumping is entitled to appellate attorney fees, but remand to the district court for its consideration of an appropriate award after an attorney fee affidavit is filed. *See In re Marriage of Heiar*, 954 N.W.2d 464, 473–74 (Iowa Ct. App. 2020).

## IV. Conclusion

On our review of the record, we find the district court applied the correct standard of compliance to the contractual issues presented and substantial evidence was presented to support the conclusion that Cooley Pumping substantially performed the terms of the contract. Cooley Pumping's substantial performance was appropriately considered as a defense to the Melchers' counterclaims. Furthermore, we agree with the district court's denial of motions for new trial because there was no newly discovered evidence that existed at the time of trial, no prejudice resulted from the late designation of an expert witness, and substantial justice was done between the parties. Finally, we find no abuse of

discretion in the district court's calculation or award of attorney fees or costs.  We remand for a determination of appellate attorney fees.

**AFFIRMED AND REMANDED.**